LATHAM & WATKINS LLP
Michele D. Johnson (SBN 198298)
Kristin N. Murphy (SBN 268285)
Jordan D. Cook (SBN 293394)
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
Email: michele.johnson@lw.com
Email: kristin.murphy@lw.com
Email: jordan.cook@lw.com

*Attorneys for Defendants*
*Edwards Lifesciences Corporation,*
*Bernard J. Zovighian, Larry L. Wood,*
*and Scott B. Ullem*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DHIMANT PATEL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EDWARDS LIFESCIENCES CORPORATION, BERNARD J. ZOVIGHIAN, LARRY L. WOOD, and SCOTT B. ULLEM,<br><br>Defendants. | Case No. 8:24-cv-02221-AH-KES<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>**Date: September 3, 2025**<br>**Time: 1:30 p.m.**<br>**Courtroom: 7D**<br>**Judge: Hon. Anne Hwang** |

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
ORANGE COUNTY

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT .................................................................................................... 2

     A.      Plaintiffs Do Not Allege an Actionable Misstatement or
           Omission ..................................................................................................... 2

     B.      Plaintiffs Fail to Plead a Strong Inference of Scienter ....................... 8

     C.      Plaintiffs Fail to Plead Loss Causation ............................................... 11

     D.      Plaintiffs Fail to Plead Insider Trading and Control
           Person Liability ...................................................................................... 12

III.    CONCLUSION ................................................................................................ 12

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
ORANGE COUNTY

CASE NO. 8:24-cv-02221-AH-KES
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

## **Table of Authorities**

## **CASES**

*Biotechnology Value Fund, L.P. v. Celera Corp.*,
  12 F. Supp. 3d 1194 (N.D. Cal. 2013)......................................................................11

*Bodri v. GoPro, Inc.*,
  252 F. Supp. 3d 912 (N.D. Cal. 2017)......................................................................10

*Chi. & Vicinity Laborers' Dist. Council Pension Fund v. Amplitude,
  Inc.*,
  2025 WL 82206 (N.D. Cal. Jan. 13, 2025) ................................................................2

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  880 F. Supp. 2d 1045 (N.D. Cal. 2012) .....................................................................7

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
  2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) ............................................................6

*Hampton v. Aqua Metals, Inc.*,
  2020 WL 6710096 (N.D. Cal. Nov. 16, 2020)............................................................4

*In re Countrywide Fin. Corp. Deriv. Litig.*,
  554 F. Supp. 2d 1044 (C.D. Cal. 2008).....................................................................9

*In re Dropbox Sec. Litig.*,
  2020 WL 6161502 (N.D. Cal. Oct. 21, 2020).............................................................5

*In re Evolus Inc. Sec. Litig.*,
  2024 WL 4306786 (S.D.N.Y. Sept. 26, 2024) ...........................................................5

*In re Fastly, Inc. Sec. Litig.*,
  2021 WL 5494249 (N.D. Cal. Nov. 23, 2021).............................................................9

*In re Fusion-io, Inc. Sec. Litig.*,
  2015 WL 661869 (N.D. Cal. Feb. 12, 2015)...............................................................3

*In re Leapfrog Enter., Inc. Sec. Litig.*,
  200 F. Supp. 3d 987 (N.D. Cal. 2016)........................................................................4

*In re LeapFrog Enters., Inc. Sec. Litig.*,
  527 F. Supp. 2d 1033 (N.D. Cal. 2007) .....................................................................9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

ii

*In re Quality Sys., Inc. Sec. Litig.*,
   865 F.3d 1130 (9th Cir. 2017)......................................................................3

*In re Silver Lake Grp., LLC Sec. Litig.*,
   108 F.4th 1178 (9th Cir. 2024)....................................................................12

*In re Solarcity Corp. Sec. Litig.*,
   274 F. Supp. 3d 972 (N.D. Cal. 2017)...........................................................3

*In re Verisign, Inc., Deriv. Litig.*,
   531 F. Supp. 2d 1173 (N.D. Cal. 2007) .........................................................9

*In re Worlds of Wonder Sec. Litig.*,
   35 F.3d 1407 (9th Cir. 1994).......................................................................11

*In re Zumiez Sec. Litig.*,
   2009 WL 901934 (W.D. Wash. Mar. 30, 2009)..............................................4

*Jaszczyszyn v. Sunpower Corp.*,
   2024 WL 3463348 (N.D. Cal. July 17, 2024) ............................................9, 12

*Lamartina v. VMware, Inc.*,
   2023 WL 2763541 (N.D. Cal. Mar. 31, 2023)..............................................12

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002).......................................................................4

*Loos v. Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014).......................................................................11

*Markette v. XOMA Corp.*,
   2017 WL 4310759 (N.D. Cal. Sept. 28, 2017)............................................5, 6

*McGovney v. Aerohive Networks, Inc.*,
   367 F. Supp. 3d 1038 (N.D. Cal. 2019) .........................................................2

*Melot v. JAKKS Pac. Inc.*,
   2014 WL 12589334 (C.D. Cal. June 5, 2014)..............................................4, 7

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008).......................................................................9

*Mineworkers' Pension Scheme v. First Solar Inc.*,
   881 F.3d 750 (9th Cir. 2018).......................................................................11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

iii

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014) ...................................................................................... 10

*Patel v. Axesstel, Inc.*,
    2015 WL 631525 (S.D. Cal. Feb. 13, 2015) ...................................................... 10

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ........................................................................... 10

*Prodanova v. H.C. Wainwright & Co.*,
    LLC, 993 F.3d 1097 (9th Cir. 2021) .................................................................. 8

*Roberts v. Zuora, Inc.*,
    2020 WL 2042244 (N.D. Cal. Apr. 28, 2020) ................................................... 10

*Rodriguez v. Gigamon Inc.*,
    325 F. Supp. 3d 1041 (N.D. Cal. 2018) ............................................................... 9

*SEB Inv. Mgmt. AB v. Align Tech., Inc.*,
    485 F. Supp. 3d 1113 (N.D. Cal. 2020) ............................................................. 12

*Tripp v. Indymac Fin. Inc.*,
    2007 WL 4591930 (C.D. Cal. Nov. 29, 2007) ................................................... 5

*Waterford Twp. Police v. Mattel, Inc.*,
    321 F. Supp. 3d 1133 (C.D. Cal. 2018), *aff'd sub nom. Castro v.
    Mattel, Inc.*, 794 F. App'x 669 (9th Cir. 2020) ............................................. 2, 3

*Weston v. DocuSign, Inc.*,
    669 F. Supp. 3d 849 (N.D. Cal. 2023) ................................................................. 6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

iv

CASE NO. 8:24-cv-02221-DDP-KES
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

## I.    INTRODUCTION[1]

The Opposition confirms Plaintiffs have no cogent theory of fraud.  They continue to claim Defendants knew their forward-looking projections "could not be achieved" because "TAVR growth had slowed significantly . . . by 2023."  Dkt. 60 ("Opp.") at 1.  But their theory encounters two fatal problems.  First, allegations of declining growth are contradicted by the Company's disclosed (and unchallenged) financial results showing Edwards recorded *more* TAVR sales each Class Period quarter.  Recognizing as much, Plaintiffs pivot to semantics, arguing "the issue here is the *growth rate*, which declined during the Class Period."  *Id*. at 20 n.9.  This attempt fails, too.  From the outset, even as TAVR sales continued to grow to record highs, Defendants told investors they expected that the *rate* of growth would slow, forecasting 8-10% growth in 2024, lower than the 12% growth Edwards achieved in 2023.  That growth ultimately slowed more than expected is not evidence of fraud— and cannot convert forward-looking projections made months earlier into fraudulent statements.  Nor can Plaintiffs' FE reports save them:  *none* was in a position to, or did, access TAVR sales data nor had any involvement with TAVR forecasting.  Second, dismissal is appropriate because Plaintiffs do not adequately plead scienter.  They concede that three Individual Defendants had *no* motive to commit fraud; and as for Zovighian, they fail to show his sole Class Period sale—a relatively small sale made pursuant to a Rule 10b5-1 trading plan and in line with prior trading practices—was suspicious.  Plaintiffs' continued reliance on the FEs only confirms this point: *none* interacted directly with Defendants and so could not possibly speak to any Defendants' state of mind.

Beyond these defects, Plaintiffs fail to plead loss causation, because the alleged corrective disclosure did not reveal fraud, and insider trading, because they do not show they traded contemporaneously with Zovighian or that he traded while in possession of MNPI.  The Complaint should be dismissed.

---

[1] Unless otherwise defined, capitalized terms have their meaning from the Motion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

1

CASE NO. 8:24-cv-02221-DDP-KES
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

## II.    ARGUMENT

### A.    Plaintiffs Do Not Allege an Actionable Misstatement or Omission

Plaintiffs do not—and cannot—challenge Edwards' actual results, which show higher TAVR sales each quarter.  Instead, they claim the "issue" is Defendants' "misleading" guidance concerning "the growth rate, which declined during the Class Period."  Opp. at 20 n.9.  This theory fails.  Defendants told investors that sales would continue to grow in 2024, but at rates lower (8-10%) than the prior (record) year (12%).  ¶ 108; Ex. 3 at 2.  And Defendants disclosed that growth would be even lower in 1Q24.  Ex. 2 at 9.  That growth did ultimately slow is not fraud; it shows Defendants "disclose[d] exactly what Plaintiffs claim [they] omitted." *McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1056 (N.D. Cal. 2019); Mot. at 14-15.  This dooms Plaintiffs' claims.  *See Chi. & Vicinity Laborers' Dist. Council Pension Fund v. Amplitude, Inc.*, 2025 WL 82206, at *2 (N.D. Cal. Jan. 13, 2025) (dismissing where "forecasted growth" was "below" rate from prior quarters).

Plaintiffs' claims also fail because none of the Challenged Statements are actionably false.

***PSLRA Safe Harbor***.  Plaintiffs admit that eleven of the fourteen statements Defendants identified in the Motion are **forward-looking**.[2]  Dkt. 54-1 ("App. A") at 4-5, 7-10, 12-14, 16, 18.  As for the remaining three (*id.* at 6, 11, 15), Plaintiffs clip portions of these statements to claim they are mixed (and thus exempt from the safe harbor) because they pertain to Edwards' "then-current position concerning TAVR growth."  Opp. at 12.  But Plaintiffs ignore the context in which those statements were made—namely, explaining *why* the Company believed it was well positioned for future growth.  *See Waterford Twp. Police v. Mattel, Inc.*, 321 F. Supp. 3d 1133, 1150-51 (C.D. Cal. 2018), *aff'd sub nom. Castro v. Mattel, Inc.*, 794 F. App'x 669

---

[2] Contrary to Plaintiffs' assertions (Opp. at 11), Statements 1-3 were made at "Edwards' 2023 Investor Conference" on December 7, 2023, *i.e.*, months before the Class Period began; included on a slide entitled, "2024 Sales Outlook"; and provide the basis for Edwards' TAVR projections.  ¶ 106.  They are both pre-Class Period statements and forward-looking statements, and thus not actionable.  Mot. at 7-8.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

2

CASE NO. 8:24-cv-02221-DDP-KES
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

(9th Cir. 2020) (statement forward-looking "[w]hen examined as a whole" and "read in context"). Statements 6 and 11 explained that Edwards' "increased focus on patient activation" is *why* it "remains confident that the *future* of TAVR remains strong" and is thus "positioned" for growth "well into the *future*." App. A at 6, 11; *see also Mattel*, 321 F. Supp. 3d at 1150-51 ("we remain on track," "we feel pretty confident" are forward-looking). In Statement 15, Plaintiffs cite Wood as saying, "we partner very closely," but omit (1) that Wood was responding to an analyst question about expected growth, and (2) the rest of his statement explaining that "*as we roll out* these new therapies, we want to make sure that people do it with the right volume." Ex. 2 at 14-15; *see In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *11 (N.D. Cal. Feb. 12, 2015) (statements about current conditions "in response to an analyst question" about future forward-looking). Edwards' discussion of "'then-present effects and circumstances[]' of known trends" were inputs about the "future" of Edwards' TAVR business—and remain forward-looking. *In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 991-92 (N.D. Cal. 2017).[3]

Plaintiffs next contend that **meaningful cautionary language** did not accompany Defendants' forward-looking statements because the warned-of risks "may already have come to fruition." Opp. at 15. Plaintiffs are wrong. For instance, they misleadingly cite a "20-40% decrease in TAVR volumes" in 1Q24 (*id*. at 11 (citing FE3)), but omit that the alleged decline occurred only within the small "Oklahoma region" and even then, only at hospitals FE3 "was responsible for" (¶¶ 69-70)—which says nothing about whether the risk that hospital capacity would constrain *Company-wide* TAVR growth had already materialized by the time

---

[3] Plaintiffs' cited cases are inapposite because they involved representations of past or existing facts that were false *apart from* statements of future expectations. *E.g.*, *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143-44 (9th Cir. 2017) ("concrete description[s]" about "current and past" sales pipeline). Plaintiffs plead no facts showing Edwards did not focus on "patient activation." App. A at 6, 11. As for Wood's statement (*id*. at 15), he did *not* say "they partner very closely with hospital centers" (Opp. at 11)—instead he said "*Daveen and I . . .* partner very closely on these sorts of things." Ex. 2 at 15. Plaintiffs do not show *this* statement was false.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

3

CASE NO. 8:24-cv-02221-DDP-KES
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

Defendants expressed confidence in Company-wide TAVR projections. *See In re Zumiez Sec. Litig.*, 2009 WL 901934, at *8 (W.D. Wash. Mar. 30, 2009) (rejecting FE allegations where not "positioned to accurately assess the Company's performance on such a broad scale"). And of course, while TAVR sales continued to grow each Class Period quarter—refuting any suggestion that the risk of a slowdown had already materialized—Defendants continued to warn that growth "in a post-COVID-19 market" may slow due to "budget constraints," "disruptions," "staffing shortages," and "capacity" constraints at hospitals. Mot. at 9.

In response, Plaintiffs say Edwards did not specifically warn that "competition . . . could exacerbate capacity constraints and restrict TAVR growth" (Opp. at 15-16), but the PSLRA does not require disclosure of "the precise particular factor that ultimately causes (or could cause) the forward-looking statement to be untrue." *Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at *8 (N.D. Cal. Nov. 16, 2020). Still, Edwards *did* warn of competitive risks, including that it "compete[s] with both established and newer technologies" for "patients"; these "other therapies" could render Edwards' products "uneconomical"; and Edwards' sales are impacted by "new product introductions." Ex. 1 at 4, 10. Far from being "boilerplate" (Opp. at 14), these disclosures "identify the very risks" Plaintiffs allege "came to fruition." *In re Leapfrog Enter., Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 1004 (N.D. Cal. 2016). Plaintiffs' own cited authority confirms that these "specific and extensive" disclosures, which "spoke directly to the purported misstatements," are "meaningful." *Melot v. JAKKS Pac. Inc.*, 2014 WL 12589334, at *6, 8 (C.D. Cal. June 5, 2014) (Opp. at 14) (forward-looking statements protected).

Finally, Plaintiffs claim Defendants made the statements with **actual knowledge** of falsity, which Plaintiffs say is subject to a "more lenient plausibility standard" than scienter. Opp. at 16. But the exact opposite is true: "actual knowledge" is a "*stricter* standard" than the already-heightened pleading requirement for scienter. *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 n.18

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
ORANGE COUNTY

4

CASE NO. 8:24-cv-02221-DDP-KES
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

(9th Cir. 2002). And their reliance on the FE reports confirms that Plaintiffs cannot meet this "stricter standard"—or even a more lenient one. Plaintiffs admit that none of the FEs was involved in preparing forecasts or had any direct contact with any Defendant. Opp. at 16-17. Their reports that unidentified "executives" had "access" to unspecified "data" (¶ 63), fail to explain *what* the data showed or *which* Defendants accessed such data and *when*—let alone that Defendants actually learned Edwards could not achieve its 2024 TAVR sales projections at the time of their statements. *See Tripp v. Indymac Fin. Inc.*, 2007 WL 4591930, at *5 (C.D. Cal. Nov. 29, 2007) (rejecting FE reports as insufficient to show "actual knowledge").

***Opinions***. Plaintiffs admit that thirteen of the fifteen statements Defendants identified in the Motion are opinions. App. A at 4-5, 7-10, 12-14, 16-18. They claim Statements 6, 11, and 15 (*i.e.*, the same ones they say are not forward-looking) are statements of "fact" (Opp. at 18), but these statements reflect Edwards' "assessment of and judgment about" the future of its business—and are thus opinions, too. *Markette v. XOMA Corp.*, 2017 WL 4310759, at *4 (N.D. Cal. Sept. 28, 2017) ("We remain very hopeful" is opinion statement); *In re Evolus Inc. Sec. Litig.*, 2024 WL 4306786, at *15 (S.D.N.Y. Sept. 26, 2024) (company "is confident in its [business]" is opinion statement). Plaintiffs also admit they plead no facts showing each opinion statement was objectively and subjectively false, instead claiming Defendants "omitted facts they knew regarding stalled TAVR growth." Opp. at 18. It is "no small task for an investor" to show the falsity of an opinion, and Plaintiffs come nowhere close here. *In re Dropbox Sec. Litig.*, 2020 WL 6161502, at *7 (N.D. Cal. Oct. 21, 2020). They do not identify *which* "facts" *each* Defendant knew and supposedly omitted from their opinion statements, or *how* these unspecified "facts" conflicted with Defendants' opinions. Nor can they. Defendants provided investors the specific bases for their opinions (*e.g.*, Ex. 2 at 2-4, 9 ("remain confident" in projections *because* 1Q24 "TAVR sales exceeded $1 billion" for the first time ever and is typically "our lowest growth quarter")), and at the same time Defendants

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

5

CASE NO. 8:24-cv-02221-DDP-KES
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

expressed their belief in Edwards' projections, Edwards recorded more TAVR sales than the prior quarter. Mot. at 5-6; *see also Markette*, 2017 WL 4310759, at *5 (plaintiff "makes no effort to allege that Defendants did not hold the belief they professed," "opting instead to argue that their beliefs and expectations were ultimately not borne out").

**_Puffery_**. Plaintiffs do not address the twelve statements Defendants identified as non-actionable puffery nor the cases dismissing nearly identical statements. App. A at 4-14, 18; Mot. at 13. Instead, they say every statement is actionable because Defendants supposedly knew "TAVR sales were 'sluggish' and 'looking sh*tty' before and during the Class Period." Opp. at 17 (citing *Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849 (N.D. Cal. 2023)). But in *Docusign*, fourteen CWs said defendants reviewed documents showing "lagging internal metrics" and a "higher churn rate" on a company-wide basis. 669 F. Supp. 3d at 880-82. Nothing of the sort is alleged here: TAVR sales *met* guidance, reached record highs before the Class Period, and *continued growing* during the Class Period. Mot. at 4-6. Plaintiffs allege no facts showing statements expressing confidence in Edwards' sales projections amounted to anything more than vague statements of optimism. Mot. at 13.

**_The Statements Were Not False_**. Plaintiffs' falsity theory is similarly doomed by the Company's actual financial results. Their allegations of a decline in TAVR sales are contradicted by the Company's disclosed revenue from TAVR sales, which increased every Class Period quarter. Mot. at 5-6. Edwards' results— which have never been revised or restated, and which Plaintiffs do not challenge— show TAVR sales of $979 million (4Q23), $1 billion (1Q24), and $1.04 billion (2Q24), *i.e.*, higher sales each quarter than the prior one, confirming Defendants were right to express confidence in Edwards' projections. Mot. at 5-6. The Company's "concededly accurate financial reporting" of TAVR sales is fatal to Plaintiffs' claims. *City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *12 (N.D. Cal. Dec. 17, 2019). And as soon as Defendants learned

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

6

CASE NO. 8:24-cv-02221-DDP-KES
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

that sales had slowed—at the end of 2Q24 when Edwards had complete quarterly sales data—they announced that, too, and lowered TAVR guidance for the rest of the year. ¶ 91.  That is the opposite of fraud.

Rather than address the Company's results, Plaintiffs double-down on unsubstantiated FE reports that TAVR sales had "leveled off in 2023" due to "capacity constraints," which "would limit TAVR growth in 2024." Opp. at 10.  But Plaintiffs admit none of the FEs was in a position to, or did, access TAVR sales data or had any involvement with forecasting.  The FE reports fail for other reasons, too.

*First*, Plaintiffs say "Edwards executives" discussed "manipulat[ing]" data to "show purported growth."  Opp. at 6 (citing FE1).  But FE1, who says she was "present for [these] discussions," does not say *when* these "discussions" occurred, *whether* Defendants participated, *how* these unidentified "executives" supposedly "manipulated" data, or *what* impact it had on Edwards' 2024 TAVR projections (which Plaintiffs do not claim were false).  *See City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1064-65 (N.D. Cal. 2012) (rejecting CW report of "slumping sales" without "impact" to "Juniper as a whole").  That is not surprising; FE1 worked in an entirely different division from TAVR, and Plaintiffs do not allege that she had any direct interaction with Defendants.  Mot. at 10, 15.

*Second*, Plaintiffs claim Edwards' projections were unachievable because certain FEs reported declining TAVR volumes, enrollment, and capacity.  Opp. at 1-2.  But none contradicted the Challenged Statements.  FE2 (an engineer) reported that (1) "clinical trials" were "at capacity," and (2) Zovighian discussed "declining" "enrollment in TAVR programs" at Town Hall meetings "before the Class Period." Opp. at 11, 19.  But FE2 provides no facts regarding the alleged clinical trials or how they were supposedly connected to TAVR sales results.  As Plaintiffs' own authority held, FE2's reports do not "detail with particularity . . . specific information" about enrollment or capacity that would have rendered Edwards' projections false.  *Melot*, 2014 WL 12589334, at *15 (Opp. at 14) (rejecting FE reports lacking "specific

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

7

CASE NO. 8:24-cv-02221-DDP-KES
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

information" about sales data that would suggest projections were too high).  As for FE3 and FE4, they report a "20-40% decrease in TAVR volumes from 4Q23 to 1Q24" (*id*. at 11) within *Oklahoma* only (¶ 69), not on a Company-wide basis (FE3), and that there were "internal meetings with Edwards executives" (again, *not* Defendants) "where hospital constraints were characterized as headwinds" (Opp. at 11-12) (FE4), which was *disclosed* to, not hidden from, investors.  Mot. at 16-17.

*Third*, Plaintiffs are wrong to suggest the FE reports are "corroborated by the fact that" Edwards' guidance "proved to be misleading."  Opp. at 19-20.  FE5 reported that TAVR sales were declining "in part" due to a lack of capacity, rendering Edwards' projections "very aggressive and borderline unrealistic."  Opp. at 12, 20.  But FE5 left the Company five months before the Class Period started (and two months before Edwards even announced TAVR projections) and could not possibly speak to what the Company took into account when preparing projections months after her departure.  And FE1's reports of "sh*tty" sales are contradicted— not "corroborated"—by Edwards' results.  *Id*. at 19.  1Q24 TAVR sales grew in line with expectations, at 8% on a constant currency basis (which is how Edwards measured sales growth, as Plaintiffs themselves admit).  Ex. 2 at 9; ¶ 106.  And of course, even after a slower 2Q24, Edwards *still* recorded full-year TAVR sales of $4.1 billion, within its initial, higher projected range of $4.0-$4.3 billion.  Mot. at 6.

### B.    Plaintiffs Fail to Plead a Strong Inference of Scienter

The Opposition confirms what the Complaint makes clear: it lacks particularized facts establishing the requisite strong inference of scienter.  Indeed, the Complaint says nothing about what each Defendant knew when making their statements—and must be dismissed on this basis alone.

***No Motive***.  Recognizing their inability to plead motive, Plaintiffs attempt to downplay its importance.  They first say "motive [is] not required."  Opp. at 22.  But an absence of motive makes it "much less likely that [Plaintiffs] can show a strong inference of scienter," *Prodanova v. H.C. Wainwright & Co.*, LLC, 993 F.3d 1097,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

8

CASE NO. 8:24-cv-02221-DDP-KES
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

1108 (9th Cir. 2021)—and here, Plaintiffs do not allege *Defendants* (as opposed to unspecified "executives") knew TAVR growth would decline at the same time sales were, in fact, *growing*. Mot. at 5-6. And where three Defendants (Wood, Chopra, and Ullem) are not alleged to have sold any stock during the Class Period, it "supports an inference of no scienter" as to all Defendants, *Jaszczyszyn v. Sunpower Corp.*, 2024 WL 3463348, at *14 (N.D. Cal. July 17, 2024), because it suggests there was "no insider information from which to benefit," *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008).

Plaintiffs nevertheless say Zovighian's Class Period sale was "suspicious" because he "sold $755,000 worth of Edwards shares." Opp. at 22. But "even large stock sales, without more, cannot give rise to a strong inference of scienter." *In re Verisign, Inc., Deriv. Litig.*, 531 F. Supp. 2d 1173, 1207 (N.D. Cal. 2007). That is particularly true here; Zovighian sold just 12% of his total holdings, far below the "37%" or higher range courts deem "necessary to support scienter." *Rodriguez v. Gigamon Inc.*, 325 F. Supp. 3d 1041, 1057 (N.D. Cal. 2018). Plaintiffs also admit he sold under a Rule 10b5-1 plan (Opp. at 23), "rebut[ting] any inference of scienter." *Metzler*, 540 F.3d at 1067; *In re Fastly, Inc. Sec. Litig.*, 2021 WL 5494249, at *17 (N.D. Cal. Nov. 23, 2021) (no scienter where plan adopted in class period); *cf. In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1068-69 (C.D. Cal. 2008) (Opp. at 23) (plan amended to "double" the shares to sell "at the height of the market"). Nor do Plaintiffs show Zovighian's sale, which was in line with prior trading practices, was suspiciously timed. In fact, they "make no attempt" to link his sale to any "intentional misrepresentations." *In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1052 (N.D. Cal. 2007). Their illusory "six-month control period" rule, in which they ask the Court to ignore Zovighian's prior sales (Opp. at 23), is contrary to established law. *See* Mot. at 18-19.

Finally, Plaintiffs' claim that Defendants were "incentivized" to increase their "stock-based" "compensation" (Opp. at 23) is insufficient to support fraudulent

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

9

CASE NO. 8:24-cv-02221-DDP-KES
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

intent. *See* Mot. at 19. *Patel v. Axesstel, Inc.*, 2015 WL 631525 (S.D. Cal. Feb. 13, 2015) (Opp. at 23), is not to the contrary. Unlike in *Patel*—where the CEO "recogniz[ed] revenue" knowing "there were no written contracts," conduct akin to "embezzling . . . funds"—Defendants made forward-looking assessments based on data available to them that projected growth to *slow*, which is the exact opposite of the "reckless gamble" seen in *Patel*. 2015 WL 631525, at \*13.

**_No Knowledge_**. Without any plausible motive, Plaintiffs double down on the FE allegations. Plaintiffs urge the Court to blindly accept the FEs because Plaintiffs supposedly described their "roles, responsibilities and personal knowledge" (Opp. at 16), but lacking is a single particularized allegation showing that the FEs have any insight into what *each* Defendant knew at the time they made *each* of their statements. *See Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 604, 607 (9th Cir. 2014). Indeed, far from the specific and intimate details in Plaintiffs' cited authority, the FEs here speak only to what unidentified Edwards "executives" or "officials" knew or did at unspecified periods of time—not any Defendant. Mot. at 20-22; *cf. Roberts v. Zuora, Inc.*, 2020 WL 2042244, at \*10-11 (N.D. Cal. Apr. 28, 2020) (Opp. at 16-17) (crediting FE allegations where, unlike here, former employees worked directly with products at issue). The FEs' vague allegations lack the "*who, what, where, when*, and *how*" of the allegedly contradictory information Defendants supposedly possessed "that belies fraudulent intent." *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 932 (N.D. Cal. 2017).

**_No Core Operations Liability_**. Plaintiffs next say it would be "absurd" if Defendants were "without knowledge of the matter" because TAVR was Edwards' "main revenue driver." Opp. at 22. That is not enough. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014) (no inference regarding flagship product). And Plaintiffs do not identify what "matter[s]" Defendants allegedly knew of, nor how such "matter[s]" gave them knowledge that their statements were false at the time they were made—particularly when TAVR

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
ORANGE COUNTY

10

CASE NO. 8:24-cv-02221-DDP-KES
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

sales grew during the Class Period. Opp. at 22.

***Acquisitions Do Not Support Scienter***. Plaintiffs' claim that acquisitions somehow corroborate scienter is entirely speculative. *See Biotechnology Value Fund, L.P. v. Celera Corp.*, 12 F. Supp. 3d 1194, 1202-03 (N.D. Cal. 2013)). Plaintiffs allege no facts, much less particularized ones, showing Edwards intentionally "acquire[d] non-TAVR companies" to conceal that it knew its TAVR projections—made many months before the acquisitions—were false. Opp. at 22; *see In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1419 (9th Cir. 1994) (rejecting "hindsight" allegations that turn "business judgment into securities fraud").

***Non-Fraudulent Inference More Compelling***. Plaintiffs offer no plausible motive and no witness or other evidence showing contemporaneous falsity. They say Defendants "concealed the truth . . . to avoid losing millions personally if the stock price tanked" (Opp. at 23), but three of the four Individual Defendants sold no stock. The more compelling inference is that Defendants made forward-looking assessments based on data available to them and, when conditions changed, adjusted expectations going forward. That is evidence of good faith, not fraud.

### C.   Plaintiffs Fail to Plead Loss Causation

The Opposition underscores that Plaintiffs have not pled loss causation. Plaintiffs claim they need only show the Challenged Statements were a "proximate cause" of their purported losses. Opp. at 24 (citing *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 753 (9th Cir. 2018)). But even *Mineworkers* held that plaintiffs must "trac[e] the loss back to the very facts about which the defendant lied." 881 F.3d at 753. Plaintiffs do no such thing here. In the July 24, 2024 disclosure they claim is "corrective," Edwards announced "lower-than-expected" 2Q24 TAVR sales growth. Opp. at 24. But disclosure of an "earnings miss, standing alone, is insufficient to establish loss causation." *Loos v. Immersion Corp.*, 762 F.3d 880, 887-89 (9th Cir. 2014). Plaintiffs also claim the disclosure corrected prior statements that "hospital capacity. . . was 'not a big challenge'" to TAVR growth.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

11

CASE NO. 8:24-cv-02221-DDP-KES
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

Opp. at 24–25. But that is *not* what Defendants said. Rather, they said "*so far*, we have not faced a big challenge in term[s] of the centers having a lack of capacity to be able to treat the patients, *whether TAVR patients or EVOQUE patients*." ¶ 119(c). Plaintiffs admit *this* statement was true—and reaffirmed in Edwards' July 24 disclosure. Opp. at 24-25. Moreover, Edwards repeatedly warned investors that "budget constraints and staffing shortages" at hospitals and "fluctuations" in "medical procedure rates and demand" could affect sales, and disclosures that confirm previously disclosed risks are not corrective. Mot. at 5, 9, 24.

### D.   Plaintiffs Fail to Plead Insider Trading and Control Person Liability

Plaintiffs' Section 20A and 20(a) claims fail without a **predicate** Section 10(b) violation. Their Section 20A claim fails for other reasons, too. To start, Plaintiffs concede Zovighian traded under a pre-set Rule 10b5-1 plan adopted three months earlier (Opp. at 23), negating any suggestion of insider trading. *See Jaszczyszyn*, 2024 WL 3463348, at *14. And Plaintiffs' conclusory assertions that Zovighian knew of "stalled TAVR growth" and "capacity constraints" (Opp. at 25), do not show "*specifically what* information [he] obtained," "*when* and *from whom* he obtained it," and "*how* he used it for his own advantage"—as required to show he possessed **MNPI** at the time he entered into his trading plan. *In re Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th 1178, 1191 (9th Cir. 2024). Finally, Plaintiffs admit Fort Lauderdale purchased shares for less than Zovighian sold (Opp. at 25) making it "*impossible*" for Zovighian to have traded "at an unfair advantage." *SEB Inv. Mgmt. AB v. Align Tech., Inc.*, 485 F. Supp. 3d 1113, 1135-36 (N.D. Cal. 2020). In these circumstances, they did not trade **contemporaneously**. Mot. at 25.[4]

## III.   CONCLUSION

Defendants respectfully request that the Complaint be dismissed.

---

[4] Plaintiffs' sole support, *Lamartina v. VMware, Inc.*, 2023 WL 2763541, at *19 (N.D. Cal. Mar. 31, 2023), is against the weight of authority requiring plaintiffs to show harm, and did not analyze the pricing mismatch.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

12

CASE NO. 8:24-cv-02221-DDP-KES
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

Dated: August 18, 2025

**LATHAM & WATKINS LLP**

By: / Kristin N. Murphy
    Kristin N. Murphy
    *Kristin.Murphy@lw.com*
    Michele D. Johnson
    *Michele.Johnson@lw.com*
    Jordan D. Cook
    *Jordan.Cook@lw.com*
    650 Town Center Dr., 20th Fl.
    Costa Mesa, CA 92626-1925
    (714) 540-1235

*Attorneys for Defendants Edwards Lifesciences Corporation, Bernard J. Zovighian, Larry L. Wood, and Scott B. Ullem*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

13

CASE NO. 8:24-cv-02221-DDP-KES
DEFENDANTS' REPLY ISO
MOTION TO DISMISS

## **L.R. 11-6.2. CERTIFICATE OF COMPLIANCE**

The Undersigned, Counsel of Record for Defendant Edwards Lifesciences Corporation, Bernard J. Zovighian, Larry L. Wood and Scott B. Ullem, certifies that this brief contains 12 pages, which complies with the page limit set by Court order dated December 20, 2024.  Dkt. 40.


Dated:  August 18, 2025                              By: / Kristin N. Murphy
                                                          Kristin N. Murphy

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

14

CASE NO. 8:24-cv-02221-DDP-KES
DEFENDANTS' REPLY ISO
MOTION TO DISMISS