**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Lead Counsel for Lead Plaintiffs Louisiana Sheriffs' Pension & Relief Fund and City of Fort Lauderdale Police & Firefighters' Retirement System and the Settlement Class*

[Additional counsel appear on signature page.]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| DHIMANT PATEL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EDWARDS LIFESCIENCES CORPORATION and BERNARD J. ZOVIGHIAN,<br><br>Defendants. | Case No. 8:24-cv-02221-AH-KES<br><br>**LEAD PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT**<br><br>Judge: Hon. Anne Hwang<br>Courtroom: 9C, 9th Floor<br>Date: July 29, 2026<br>Time: 1:30 p.m. |

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ..... 2

II. SUMMARY OF THE LITIGATION ..... 4

A. The Filing of the Action and the Appointment of Lead Plaintiffs and Lead Counsel ..... 4

B. The Filing of the Complaint and the Briefing of Defendants' Motion to Dismiss ..... 5

C. The Parties Conduct Extensive Discovery On Zovighian's Scienter ..... 6

D. The Settlement Negotiations ..... 6

III. THE PROPOSED SETTLEMENT ..... 7

IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE PROPOSED SETTLEMENT ..... 9

A. Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class in this Action ..... 10

B. The Settlement Was Reached Through Extensive Arm's-Length Negotiations Between Experienced Counsel, and Achieved with the Assistance of an Experienced Mediator ..... 11

C. The Proposed Settlement is Within the Range of Possible Approval ..... 13

D. The Settlement Treats All Settlement Class Members Fairly ..... 16

E. The Settlement Does Not Excessively Compensate Lead Counsel ..... 17

F. Lead Plaintiffs Have Identified All Agreements Made in Connection with the Settlement ..... 17

V. THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 ..... 18

A. The Proposed Settlement Class Satisfies Rule 23(a) ..... 19

B. The Proposed Settlement Class Satisfies Rule 23(b) ..... 21

VI. THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS ........ 22

VII. PROPOSED SCHEDULE OF EVENTS ........ 24

VIII. CONCLUSION ........ 25

**TABLE OF AUTHORITIES**


**CASES** **Page(s)**

*Alfus v. Pyramid Tech. Corp.*,
764 F. Supp. 598 (N.D. Cal. 1991) ....................20

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ....................19, 20, 22

*In re Banc of Cal Sec. Litig.*,
326 F.R.D. 640 (C.D. Cal. 2018) ....................19

*In re Banc of California Sec. Litig.*,
2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ....................23

*Baron v. HyreCar Inc.*,
2024 WL 3504234 (C.D. Cal. July 19, 2024) ....................16

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ....................20

*In re Broadcom Corp. Sec. Litig.*,
2005 WL 8153007 (C.D. Cal. Sept. 14, 2005) ....................16

*Brown v. China Integrated Energy Inc.*,
2015 WL 12720322 (C.D. Cal. Feb. 17, 2015) ....................19

*Churchill Vill., L.L.C. v. Gen Elec.*,
361 F.3d 566 (9th Cir. 2004) ....................10

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ....................9

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) ....................21

*In re Edwards Lifesciences Corp. Derivative Litigation*,
8:24-cv-02822-AH-KES (C.D. Cal.) ....................8

*Elliott v. Rolling Frito-Lay Sales, LP*,
2014 WL 2761316 (C.D. Cal. June 12, 2014) ....................9

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011) ........ 21

*Farrar v. Workhorse Grp., Inc.*,
2023 WL 5505981 (C.D. Cal. July 24, 2023) ........ 16

*Garcia v. Harkins Admin. Servs.*,
2021 WL 2792321 (C.D. Cal. Jan. 4, 2021) ........ 10

*Gonzales v. Arrow Fin. Servs. LLC*,
489 F. Supp. 2d 1140 (S.D. Cal. 2007) ........ 20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........ 19, 21

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ........ 18

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ........ 9, 11, 12

*Hill v. Canidae Corp.*,
2021 WL 4988032 (C.D. Cal. Apr. 2, 2021) ........ 12

*Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ........ 9

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) ........ 22

*In re LDK Solar Sec. Litig.*,
255 F.R.D. 519 (N.D. Cal. 2009) ........ 21

*Lerwill v. Inflight Motion Pictures, Inc.*,
582 F.2d 507 (9th Cir. 1978) ........ 21

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ........ 9

*Milbeck v. TrueCar, Inc.*,
2019 WL 2353010 (C.D. Cal. May 24, 2019) ........ 19, 20

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019) ........ 20

*Misra v. Decision One Mortg. Co.*,
2009 WL 4581276 (C.D. Cal. Apr. 13, 2009) .......... 13

*In re NetSol Techs., Inc. Sec. Litig.*,
2016 WL 7496724 (C.D. Cal. July 1, 2016) .......... 19

*Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) .......... 12

*Pederson v. Airport Terminal Servs.*,
2018 WL 2138457 (C.D. Cal. Apr. 5, 2018) .......... 10, 12, 13

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) .......... 23

*Schleicher v. Wendt*,
618 F.3d 679 (7th Cir. 2010) .......... 21

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) .......... 18

*In re Silver Wheaton Corp. Sec. Litig.*,
2017 WL 2039171 (C.D. Cal. May 11, 2017) .......... 20

*In re Silver Wheaton Corp. Sec. Litig.*,
2020 WL 4581642 (C.D. Cal. Aug. 6, 2020) .......... 17

*In re Snap Inc. Sec. Litig.*,
2021 WL 667590 (C.D. Cal. Feb. 18, 2021) .......... 11

*Thomas v. MagnaChip Semiconductor Corp.*,
2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) .......... 18

**STATUTES & RULES**

15 U.S.C. § 78u-4(e) .......... 17

Fed. R. Civ. P. 23(a)(1) .......... 19

Fed. R. Civ. P. 23(a)(2) .......... 19

Fed. R. Civ. P. 23(e)(1) .......... 2, 9, 13

Fed. R. Civ. P. 23(e)(1)(B) .......... 2, 9, 18, 22

Fed. R. Civ. P. 23(e)(2) .......... 9, 10

Fed. R. Civ. P. 23(e)(2)(A) .......... 11

Fed. R. Civ. P. 23(e)(3) .......... 10

**NOTICE OF MOTION AND UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF SETTLEMENT**

TO: THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that Court-appointed Lead Plaintiffs City of Fort Lauderdale Police & Firefighters' Retirement System ("Fort Lauderdale P&F") and Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs") (together, "Lead Plaintiffs") hereby move this Court for entry of an Order pursuant to Fed. R. Civ. P. 23(e)(1) that will: (i) preliminarily approve the proposed Settlement of this Action; (ii) approve the form and manner of giving notice of the proposed Settlement to the Settlement Class; and (iii) schedule a final settlement hearing before the Court ("Settlement Hearing") to determine whether the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for attorneys' fees and Litigation Expenses should be approved.[1] This motion is supported by the following memorandum of points and authorities in support thereof, and the Stipulation and the exhibits thereto, which embody the terms of the proposed Settlement between the Parties, the previous filings and orders in this case, and such other and further representations as may be made by counsel at any hearing on this matter.

Pursuant to Local Civil Rule 6-1, the motion is noticed for a hearing on Wednesday, July 29, 2026, at 1:30 p.m. However, because the motion is unopposed, the parties respectfully propose that, subject to the Court's approval, it could be decided on the papers at this time and without a hearing, which would expedite the provision of notice to putative Class members.

[1] Unless otherwise indicated, capitalized terms shall have their meaning as defined in the Stipulation and Agreement of Settlement, dated July 1, 2026 (the "Stipulation" or "Stipulation of Settlement"), attached hereto as Exhibit 1. Unless otherwise noted, all internal quotations and citations are omitted herein.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. PRELIMINARY STATEMENT

Lead Plaintiffs are pleased to report that they have reached an agreement to settle this action in exchange for a payment of $39 million in cash for the benefit of the Settlement Class (the "Settlement"), subject to the Court's approval. Lead Plaintiffs now seek preliminary approval of the proposed Settlement pursuant to Rule 23(e)(1). The motion is unopposed, and all parties respectfully submit that it may be decided on the papers at this time, subject to the Court's preference.

Approval of the proposed Settlement is a two-step process. *See* Fed. R. Civ. P. 23(e)(1), (2). At this initial stage, Lead Plaintiffs request only that the Court grant preliminary approval of the proposed Settlement. If granted, this would begin the process of considering the proposed Settlement by: (i) allowing notice to be sent to potential Settlement Class Members, and (ii) scheduling the proposed final approval hearing (the "Settlement Hearing"). Next, at the Settlement Hearing, the Court will be asked to determine whether the Settlement is fair, reasonable, and adequate based on more detailed motion papers prior to that hearing.

To grant preliminary approval, the Court need only find that it "will likely be able to" finally approve the Settlement, Fed. R. Civ. P. 23(e)(1)(A), and "will likely be able to" certify the Settlement Class, Fed. R. Civ. P. 23(e)(1)(B). As detailed herein, the proposed Settlement, which is set forth in the Stipulation attached hereto as Exhibit 1, satisfies all the standards for preliminary approval. To start, Lead Plaintiffs and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the claims when the proposed Settlement was reached. The proposed Settlement is the result of Lead Plaintiffs' vigorous prosecution of this Action. At the early stages of the litigation, Lead Plaintiffs and Lead Counsel conducted an extensive investigation of the claims at issue. Lead Plaintiffs and Lead Counsel prepared a detailed amended complaint based on that investigation. Lead Plaintiffs and Lead Counsel then defeated in part Defendants' motion to dismiss and

conducted meaningful fact discovery. This process involved extensive negotiations by Lead Counsel as well as a motion to compel Defendants to produce additional discovery. As a result, Lead Counsel obtained and analyzed over 125,000 pages of documents (over 23,500 documents in total) produced by Defendants.

The proposed Settlement was also negotiated at arms'-length by parties that were represented by experienced and able counsel. The settlement negotiations took place through a formal mediation process conducted with the direct involvement of Jed D. Melnick of JAMS, an experienced mediator in complex litigation. This process included the exchange of detailed mediation statements and a full-day mediation session. The Settlement was ultimately reached only after extensive and hard-fought negotiations by the Parties—and yet Mr. Melnick still had to make a mediator's recommendation to bridge the gap, which the Parties accepted.

The Settlement is particularly favorable when weighed against the significant risks of a smaller recovery or no recovery at all, or the delay to any recovery that would have accompanied continued litigation. Indeed, in denying the motion to dismiss in part, the Court dismissed all executive defendants except for one. And with respect to that one remaining executive defendant, CEO Zovighian, the Court expressly noted that the issue of his scienter is "a very close one" and proposed "phased discovery limited to the issue of Zovighian's knowledge and scienter." ECF No. 72 at 21, fn.10. For their part, Defendants insisted that Zovighian had no scienter at all and argued that the discovery they produced unequivocally proved it. Defendants' arguments on scienter presented significant risk to any recovery. Defendants also vehemently argued that Edwards did not make a single materially false and misleading statement to investors. In that regard, Defendants argued that the discovery showed that no internal information contradicted their Class Period statements to investors and, regardless, they had repeatedly warned investors that TAVR growth might slow so no one was misled. Further, Defendants argued that investors did not suffer any damages, including because Edwards merely revised its

forward-looking guidance and revealed financial results that cannot establish loss causation. In light of the significant risks involved, the proposed $39 million Settlement represents a favorable recovery for the Settlement Class.

Lead Plaintiffs respectfully request that the Court enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice of Settlement ("Preliminary Approval Order") attached as Exhibit A to the Stipulation and as Exhibit 2 hereto. The Preliminary Approval Order will, among other things: (i) preliminarily approve the terms of the Settlement as set forth in the Stipulation; (ii) approve the form and method for providing notice of the Settlement to the Settlement Class, which mirrors the form of notice routinely approved by courts across the country in securities class action settlements, and is designed to ensure that Settlement Class Members are notified of the Settlement and informed of their rights to participate therein, object thereto, or seek exclusion from the Settlement Class; and (iii) schedule the Settlement Hearing at which the Court will consider the request for final approval of (1) the Settlement set forth in the Stipulation; (2) the plan for allocating the net proceeds of the Settlement among eligible Settlement Class Members; and (3) Lead Counsel's motion for attorneys' fees and expenses.

## II. SUMMARY OF THE LITIGATION

### A. The Filing of the Action and the Appointment of Lead Plaintiffs and Lead Counsel

On October 14, 2024, the initial complaint in the Action was filed in this Court alleging violations of the Securities Exchange Act of 1934 (the "Exchange Act") by Edwards and certain of its executives. ECF No. 1. On December 29, 2024, the Court appointed City of Fort Lauderdale Police & Firefighters' Retirement System and Louisiana Sheriffs' Pension & Relief Fund as Lead Plaintiffs and approved Bernstein Litowitz Berger & Grossmann LLP as Lead Counsel under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. ECF No. 43.

### B. The Filing of the Complaint and the Briefing of Defendants' Motion to Dismiss

On March 21, 2025, Lead Plaintiffs filed the Amended Consolidated Complaint for Violations of the Federal Securities Laws (the "Complaint"). ECF No. 52. In the Complaint, Lead Plaintiffs alleged that Defendants Edwards and Zovighian and the Former Individual Defendants violated Sections 10(b) the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission Rule 10b-5, by making alleged misrepresentations concerning the growth prospects of the Edwards' core product, its transcatheter aortic valve replacement ("TAVR") platform. Lead Plaintiffs further asserted (i) claims under Sections 20(a) of the Exchange Act against Defendant Zovighian and the Former Individual Defendants, alleging that these individuals controlled Edwards when the Company made the alleged misstatements concerning TAVR in violation of Section 20(a); and (ii) claims under Section 20A of the Exchange Act against Zovighian, alleging that he sold Edwards stock while in possession of material, nonpublic adverse information concerning TAVR, and that Lead Plaintiffs and other Settlement Class Members purchased Edwards stock contemporaneously.

On May 20, 2025, Defendants and the Former Individual Defendants moved to dismiss the Complaint in its entirety asserting (among other things) that Lead Plaintiffs failed to sufficiently allege: (i) any actionable false or misleading statement; (ii) that defendants acted with scienter; and (iii) loss causation. ECF No. 54. Defendants and the Former Individual Defendants also made a request for judicial notice of certain exhibits attached to their motion to dismiss. ECF No. 55.

On July 18, 2025, Lead Plaintiffs filed their opposition to the motion to dismiss and request for judicial notice. ECF Nos. 60, 61. On August 18, 2025, Defendants filed their reply papers. ECF Nos. 62, 63.

The Court held oral argument on the motion to dismiss the Complaint on September 17, 2025. On September 19, 2025, the Court entered an order granting in

part and denying in part the motion to dismiss the Complaint. ECF No. 72. The Court (i) dismissed Lead Plaintiffs' Section 10(b) and Rule 10b-5 claims against the Former Individual Defendants but sustained them against Defendants Edwards and Zovighian; (ii) noted that the issue of Zovighian's scienter was "a very close one;" (iii) sustained Lead Plaintiffs' Section 20(a) claims against Zovighian but dismissed those claims against the Former Individual Defendants; and (iv) dismissed Lead Plaintiffs' Section 20A claims against Zovighian. *Id*. In its September 19, 2025 order, the Court suggested that the Parties "phase[] discovery" by first "limit[ing] [it] to the issue of Zovighian's knowledge and scienter"—and even proposed "early motion practice, or other potential relief requested by Defendants." ECF No. 72 at 21. Further, the Court granted Defendants' request for judicial notice.

On October 21, 2025, Defendants filed their Answer. ECF No. 79.

### C. The Parties Conduct Extensive Discovery On Zovighian's Scienter

Discovery in the Action commenced following the Court's September 19, 2025 ruling on Defendants' motion to dismiss the Complaint. Lead Plaintiffs served discovery requests in September 2025, and Defendants responded in October 2025. The Parties then engaged in significant negotiations over the discovery to be produced. In this phased discovery, Defendants produced over 125,000 pages of documents (over 23,500 documents in total). Lead Counsel conducted a detailed review and analysis of the documents, including through frequent discussions and regular "hot docs" meetings to discuss the progress of the review, to gain a firm understanding of the strengths and weaknesses of the case, and to prepare for mediation and, if necessary, summary judgment and/or trial.

### D. The Settlement Negotiations

L.R. 16-15 of the Local Rules—Central District of California (i) states *inter alia* that it "is the policy of the Court to encourage disposition of civil litigation by settlement when such is in the best interest of the parties," (ii) urges litigants "first

to discuss and to attempt to reach settlement among themselves," and (iii) requires mandatory ADR procedures. Pursuant to this guidance, the Parties negotiated a case schedule that contemplated engaging in a private mediation in early 2026, which they proposed to the Court. The Court incorporated that deadline for private mediation in its Scheduling Order. ECF No. 84; *see also* ECF No. 87 (adopting the Parties' stipulation to extend deadline to complete mediation). The Parties agreed to retain Jed D. Melnick of JAMS to act as mediator in the Action (the "Mediator").

Counsel for the Parties participated in a mediation session before the Mediator on April 20, 2026. In advance, the Parties exchanged and submitted detailed mediation statements to the Mediator. In connection with the mediation process, Mr. Melnick made a mediator's recommendation that the Parties settle the Action for $39,000,000, which the Parties accepted. The terms of the Parties' agreement were memorialized in a Memorandum of Understanding that the Parties negotiated extensively and then executed on June 2, 2026 (the "MOU").

Thereafter, the parties negotiated a formal Stipulation of Settlement, which sets forth the terms and conditions of the Settlement. The Stipulation was executed on July 1, 2026 and is submitted herewith as Exhibit 1. The Parties also entered into a confidential Supplemental Agreement, which gives Defendants the right to terminate the Settlement if valid and timely requests for exclusion are received from persons and entities entitled to be members of the Settlement Class in an amount that exceeds a threshold agreed to by Lead Plaintiffs and Defendants. At the Court's request, the Parties will submit the Supplemental Agreement to the Court *in camera*.

## III. THE PROPOSED SETTLEMENT

The Settlement provides that Defendants will cause $39 million in cash to be paid into an interest-bearing escrow account. If the Settlement is approved, the Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and Litigation Expenses awarded by the Court, Notice and Administration Costs, and Taxes (the "Net Settlement Fund"), will be distributed among Settlement Class

Members who submit valid and timely Claim Forms, in accordance with a plan of allocation to be approved by the Court. The Settlement Class will receive the full benefit of the $39 million payment, net of Court-approved fees and expenses. There will be no reversion of funds to Defendants or their insurers once the Settlement becomes final. *See* Stipulation ¶ 13.

In connection with the Settlement, the Parties have stipulated to the certification of the Settlement Class for purposes of the Settlement. The Settlement Class is the same as the proposed class set forth in the Complaint. The Settlement Class includes all persons or entities who purchased or otherwise acquired Edwards common stock during the period from February 6, 2024 through July 24, 2024, inclusive, and were damaged thereby. *See* Stipulation ¶ 1(pp); ECF No. 52 at ¶ 148. Prior to final approval, members of the Settlement Class will be provided the opportunity to request exclusion from the Settlement Class.

In exchange for the payment of the Settlement Amount, Settlement Class Members will release the "Released Plaintiffs' Claims." Stipulation ¶ 1(kk). The Settlement's release provision is tailored to the Settlement Class's claims. Specifically, the release is limited to (i) the claims asserted in the Action; or (ii) unasserted claims that could have been asserted (or could in the future be asserted) but only if they relate to "the allegations, claims, disclosures, acts, transactions, facts, events, circumstances, matters, occurrences, conduct, failures to act, statements, representations or omissions involved, set forth, alleged or referred to in the Action (or any complaint filed in the Action) or which could have been alleged or referred to in the Action based on the facts or events at issue" ***and*** "the purchase or acquisition of Edwards common stock during the Class Period." *Id.* The "Released Plaintiffs' Claims" also explicitly exclude any claims asserted in any related ERISA or shareholder derivative action, including *In re Edwards Lifesciences Corp. Derivative Litigation*, 8:24-cv-02822-AH-KES (C.D. Cal.), as well as any claims to enforce the Settlement and any claims of any person or entity

who or which is excluded from the Settlement Class.

## IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL TO THE PROPOSED SETTLEMENT

The Ninth Circuit has a strong judicial policy favoring the settlement of class actions. *See, e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005) ("There is an overriding public interest in settling and quieting litigation, and this is particularly true in class action suits."). Settlements of complex cases greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice. *See Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at *3 (C.D. Cal. June 12, 2014) ("judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation").

Federal Rule of Civil Procedure 23(e) governs judicial approval of class action settlements. The procedure for approval of a proposed class action settlement is a well-established, two-step process. *First*, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the members of the class. *See* Fed. R. Civ. P. 23(e)(1). *Second*, following distribution of the notice, and after a hearing, the Court determines whether to grant final approval of the settlement based on a full motion record. *See* Fed. R. Civ. P. 23(e)(2); *see also Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *3 (C.D. Cal. Oct. 10, 2019).

The Federal Rules of Civil Procedure instruct that a court should grant preliminary approval to authorize notice of a settlement upon a finding that it "will likely be able" to finally approve the settlement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(1)(B). This standard effectively codifies prior case law providing for preliminary approval if a settlement: "(1) appears to be the product of serious,

informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Pederson v. Airport Terminal Servs.*, 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018).

In considering final approval of the Settlement, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court also considers the factors identified by the Ninth Circuit, many of which overlap with the Rule 23(e)(2) factors. *See Churchill Vill., L.L.C. v. Gen Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Garcia v. Harkins Admin. Servs.*, 2021 WL 2792321, at *1-2 (C.D. Cal. Jan. 4, 2021).[2]

### A. Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class in this Action

In determining whether to approve a class-action settlement, the Court should

[2] These factors are "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill*, 361 F.3d at 575-76.

first consider whether Lead Plaintiffs and Lead Counsel "have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A).

Here, Lead Plaintiffs and Lead Counsel have vigorously prosecuted this litigation for nearly two years, including by: (i) completing an extensive pre-suit investigation of the claims at issue, including interviews of former Edwards employees; (ii) preparing and filing an initial complaint and a detailed amended complaint; (iii) opposing Defendants' motions to dismiss the Complaint, which was successful in getting some of the challenging claims sustained; (iv) conducting meaningful fact discovery, including obtaining and reviewing over 125,000 pages of documents from Defendants pursuant to the Court's direction to focus on Defendant Zovighian's scienter; and (v) engaging in an arms'-length mediation process supervised by an experience neutral mediator (as further detailed below). As a result of these efforts, Lead Plaintiffs and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the claims when the Settlement was reached.

### B. The Settlement Was Reached Through Extensive Arm's-Length Negotiations Between Experienced Counsel, and Achieved with the Assistance of an Experienced Mediator

A proposed class-action settlement is considered presumptively fair where, as here, the parties have engaged in extensive arm's-length negotiations after meaningful discovery. *See In re Snap Inc. Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) ("the fact that the settlement was negotiated at arm's length and reached after discovery renders the agreement presumptively fair"); *Heritage Bond*, 2005 WL 1594403, at *9 ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery."). This factor favors preliminary approval.

Here, the Parties participated in an extensive, arm's length mediation process before Mr. Melnick, an experienced mediator. The Parties' mediation efforts

involved the exchange of detailed mediation statements and a full-day mediation session. The Parties reached an agreement following extensive negotiations and, even then, only after Mr. Melnick issued a mediator's recommendation that the Action be settled for $39 million, which the Parties accepted.

The substantial arm's-length settlement negotiations under the supervision of an experienced mediator strongly support the conclusion that the Settlement is fair and was achieved free of collusion. *See Hill v. Canidae Corp.*, 2021 WL 4988032, at *8 (C.D. Cal. Apr. 2, 2021) ("The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive."); *Pederson*, 2018 WL 2138457, at *7 ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

By the time of the Parties' Settlement, Lead Counsel was fully informed and fully knowledgeable of the facts of the case, as it had been actively litigating this Action for nearly two years and had conducted substantial fact discovery per the Court's direction to focus on the knowledge and scienter of Defendant Zovighian (CEO). Lead Counsel is highly experienced in securities litigation and has achieved some of the largest recoveries in history for investors. *See* ECF No. 35-5. Courts have repeatedly recognized that "the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *3 (C.D. Cal. May 6, 2014); *see also Heritage Bond*, 2005 WL 1594403, at *9 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

Additionally, throughout the Action and the settlement negotiations, a reputable and experienced international law firm—Latham & Watkins LLP—vigorously represented Defendants. Defense counsel were therefore equally well-informed regarding the case and their representation of Defendants was no less rigorous than Lead Counsel's representation of the Settlement Class. Because the

Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified mediator, it merits preliminary approval. *See Misra v. Decision One Mortg. Co.*, 2009 WL 4581276, at *9 (C.D. Cal. Apr. 13, 2009) (granting preliminary approval where there was "no evidence of fraud or collusion" and "the parties negotiated the settlement at arms length between experienced counsel representing the interests of the plaintiffs and the defendant").

### C. The Proposed Settlement is Within the Range of Possible Approval

At the preliminary approval stage, the Court need only determine whether it will "likely be able" to approve the Settlement, Fed. R. Civ. P. 23(e)(1), or, in other words, whether the Settlement is "within the range of possible approval." *Pederson*, 2018 WL 2138457, at *7. Because the proposed $39 million Settlement represents a favorable recovery for the Settlement Class given the substantial risks of no recovery at all, the proposed Settlement falls well within the range of possible approval.

Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit. They recognize, however, the substantial risks the Settlement Class would face in establishing liability and damages, as well as the significant delay and expenses that would necessarily be incurred to pursue their claims against Defendants through summary judgment, trial, and appeals.

Indeed, Defendants vigorously challenged multiple elements of Lead Plaintiffs' claims—and, if successful, any one of their arguments could have eliminated any possible recovery or substantially reduced it.

For example, on the element of "scienter," the Court had dismissed all Edwards executives except for one. As to that one remaining executive, CEO Zovighian, the Court expressed skepticism as to whether scienter could be established. Indeed, the Court expressly wrote that the issue of Zovighian's scienter was "a very close one" and directed the Parties to pursue phased discovery starting with his scienter and knowledge. The Court also rejected outright other scienter allegations against Zovighian, such as those concerning his insider stock sales.

Defendants pointed to the Court's ruling and the discovery they had produced on the issue of Zovighian's scienter to argue vigorously that Zovighian did not have culpable knowledge or scienter. They insisted that they would prevail at summary judgment or trial because the documents showed that Zovighian believed in the Company's TAVR guidance and did not have any contrary information. If Defendants had prevailed on these arguments, the recovery would have been zero.

Defendants also disputed falsity by vigorously asserting that the Company did not issue any false or misleading statements at all. Because the Court had found that nearly all of the alleged misstatements remaining in the case were forward-looking, Defendants argued that any finding of falsity required proof that (i) Defendants' warnings about the possibility of slowed TAVR growth were insufficient; and (ii) Defendants had "actual knowledge" that their statements were false where recklessness would not suffice. Defendants maintained that they would win on both fronts. For example, Defendants pointed to the Company's cautionary statements made in its SEC filings, arguing that these warnings alerted investors to the possibility that TAVR growth might slow. Defendants also pointed to the Court's motion to dismiss ruling on scienter and the discovery they had produced to argue that Defendant Zovighian did not possess contemporaneous information that contradicted Edwards' growth projections. While these arguments did not prevail at the pleading stage, the Court did not reject them permanently and instead determined that they were "better resolved at a later stage" of the litigation on a full record. Thus, Defendants would have pressed these arguments at summary judgment or trial—and they would have continued to present risk throughout the prosecution of this Action.

Defendants also disputed the element of "loss causation," arguing for example that Lead Plaintiffs would not be able to prove that any alleged misstatements caused investors' losses. Indeed, Defendants argued vehemently that there were zero damages, including because Edwards merely revised its forward-looking guidance and revealed financial results—neither of which was sufficient to establish loss

causation. Defendants also argued that Edwards had warned investors that TAVR sales could be impacted by many factors, including hospital capacity constraints. Defendants also asserted that Edwards' revised guidance did not and could not reveal any actionable statement was false or misleading.

While Lead Plaintiffs had counter arguments on the above disputed issues, there was a risk that the Court at summary judgment or a jury at trial could accept Defendants' arguments. Moreover, these risks would have continued even if Lead Plaintiffs prevailed at summary judgment and trial, as Defendants would have inevitably appealed. If one or more of Defendants' arguments were accepted at any stage, recoverable damages would have been eliminated entirely or significantly reduced—and investors would have recovered nothing or substantially less than $39 million. The proposed Settlement eliminates all of these significant risks in favor of an immediate cash payment to investors.

The Settlement is also reasonable when considered in relation to the range of potential recoveries for the Settlement Class if Lead Plaintiffs had overcome all of the above-mentioned risks and prevailed at summary judgment, trial, and on any appeals. Lead Plaintiffs' damages consultant provided a preliminary estimate of the reasonably likely, maximum class wide damages possible if Lead Plaintiffs prevailed at all stages, which was $1.36 billion using a conservative estimate methodology and assuming no need to disaggregate any confounding information.

But Defendants would have attacked this estimate on multiple grounds. To start, Defendants insisted that investors suffered no damages at all and any recovery should be zero, including based on their arguments on liability and loss causation summarized above. Even leaving those arguments aside, Defendants would have insisted that, at a minimum, they could not be found liable for misleading TAVR guidance during the first quarter of 2024—which comprised the first half the proposed Class Period—because there were no actual TAVR results that could have rendered their full year 2024 TAVR guidance misleading. If credited, this argument

would have cut the proposed Class Period in half, reducing the reasonably likely maximum class-wide damages to approximately $850 million using the same methodology referenced above.

Judged against any of the above maximum damage estimates, the proposed Settlement represents a favorable recovery, and compares well to settlement recoveries in other securities class actions. *E.g.*, *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *8 (C.D. Cal. July 19, 2024) (approving settlement that "reflects an approximately 2% recovery" of maximum damages); *Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (approving settlement representing "an approximately 3% recovery" on the maximum aggregate damages); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153007, at *6 (C.D. Cal. Sept. 14, 2005) (approving settlement representing 2.7% of damages and finding such percentage was "not [] inconsistent with the average recovery in securities class action[s]").

**D. The Settlement Treats All Settlement Class Members Fairly**

The Settlement does not improperly grant preferential treatment to Lead Plaintiffs or any segment of the Settlement Class. Rather, all Settlement Class Members will be eligible to receive a distribution from the Net Settlement Fund in accordance with a plan of allocation to be approved by the Court.

At the final Settlement Hearing, Lead Plaintiffs will ask the Court to approve the proposed Plan of Allocation for the Net Settlement Fund. The Plan of Allocation provides a formula for the distribution of the Net Settlement Fund to Settlement Class Members demonstrating a loss on their transactions in Edwards common stock related to the alleged fraud. The formula to apportion the Net Settlement Fund among Settlement Class Members was developed by Lead Counsel in consultation with Lead Plaintiffs' damages expert and is based on the estimated amount of artificial inflation in the price of Edwards' stock during the Class Period related to the alleged misconduct.

The calculation of "Recognized Loss Amounts" under the Plan will depend

on when the claimant purchased and/or sold the eligible securities, whether the claimant held the securities through the statutory 90-day "look-back" period, *see* 15 U.S.C. § 78u-4(e), and the value of the securities when the claimant purchased, sold, or held them. Once the Claims Administrator has processed all submitted claims, it will make distributions to eligible Settlement Class Members, until additional redistributions are no longer cost effective. Any remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) approved by the Court.

### E. The Settlement Does Not Excessively Compensate Lead Counsel

This motion does not request that the Court approve any fee or expense application, which will not take place until the submission of final approval briefing. That said, the fees and expenses that Lead Counsel will request in this Action—an amount not to exceed 25% of the Settlement Fund plus litigation expenses up to $195,000—are reasonable. Lead Counsel will provide detailed information in support of its motion for attorneys' fees and expenses, which will be filed 35 days before the final Settlement Hearing. For purposes of the Court's preliminary review in connection with this motion for preliminary approval of the Settlement, Lead Counsel notes that the maximum fee that Lead Counsel will request, 25%, is consistent with the 25% benchmark percentage for attorneys' fees in the Ninth Circuit, and is well within the range of percentage fees awarded in comparable class securities class actions with significant contingency fee risks. *See, e.g., In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement).

### F. Lead Plaintiffs Have Identified All Agreements Made in Connection with the Settlement

In addition to the Stipulation, Lead Plaintiffs and Defendants have entered into a confidential Supplemental Agreement regarding requests for exclusion ("opt-outs") from the Settlement Class. *See* Stipulation ¶ 36. This agreement establishes

the conditions under which Defendants may terminate the Settlement if the opt-outs received exceed an agreed-upon threshold. "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020); *see also Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at *7 (N.D. Cal. Oct. 20, 2017) (same). As is also standard in securities class actions, agreements of this kind are not made public to avoid incentivizing individuals to leverage the opt-out threshold to exact individual settlements at the Settlement Class's expense. *See, e.g., Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts."). If requested, the Parties will submit this agreement *in camera*.

## V. THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

In determining whether to grant preliminary approval, the Court should also determine whether it "will likely be able to" certify the proposed Settlement Class for purposes of the Settlement at final approval. Fed. R. Civ. P. 23(e)(1)(B). The proposed Settlement Class, to which the Parties have stipulated, consists of "all persons or entities who purchased or otherwise acquired Edwards common stock during the period from February 6, 2024 through July 24, 2024, inclusive (the 'Class Period'), and were damaged thereby." Stipulation ¶ 1(pp).[3]

---

[3] Excluded from the Settlement Class are (i) Defendants; (ii) their respective successors and assigns; (iii) the past and current executive officers and directors of Defendants (including the Former Individual Defendants); (iv) the members of the Immediate Family Members of Zovighian and the Former Individual Defendants; (v) any entity in which any of the above excluded persons have or had a direct or controlling ownership interest; and (vi) the legal representatives, heirs, successors-in-interest or assigns of any such excluded persons or entities. Also excluded from the Settlement Class are any persons and entities that submit a request for exclusion

The Ninth Circuit has long recognized that courts may certify class actions "for settlement purposes only." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1018-19 (9th Cir. 1998). A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although Rule 23(b)(3)'s manageability concerns are not at issue. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997). The Court "will likely be able to" certify the Settlement Class at final approval because certification of the proposed Settlement Class is appropriate.

**A. The Proposed Settlement Class Satisfies Rule 23(a)**

*First*, numerosity is satisfied here. The "numerosity" requirement is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Numerosity is presumed "when a proposed class has at least forty members," *In re Banc of Cal Sec. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018), and for "securities fraud suits involving nationally traded stocks." *Milbeck v. TrueCar, Inc.*, 2019 WL 2353010, at *1 (C.D. Cal. May 24, 2019). Here, Edwards common stock was traded on the NYSE, with approximately 600 million shares outstanding as of February 29, 2024. *See In re NetSol Techs., Inc. Sec. Litig.*, 2016 WL 7496724, at *3 (C.D. Cal. July 1, 2016) ("Courts in the Central District have inferred that classes in securities cases include more than forty members.").

*Second*, commonality is satisfied. Commonality is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) is "construed permissively" and "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019. "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Banc of Cal.*, 326 F.R.D. at 646. Plaintiffs in securities fraud litigation generally satisfy this prerequisite "very easily." *Brown v. China Integrated Energy Inc.*, 2015 WL 12720322, at *14 (C.D. Cal. Feb. 17, 2015). Here, there are

---

from the Settlement Class that is accepted by the Court.

numerous common questions of law and fact, including: (i) whether Defendants omitted or misrepresented material facts; (ii) whether Defendants acted with scienter; (iii) whether the price of Edwards common stock was artificially inflated or maintained during the Class Period; and (iv) whether Defendants' misrepresentations and omissions caused class members to suffer economic losses. Courts routinely certify classes in securities fraud cases involving such common questions. *E.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975); *TrueCar*, 2019 WL 2353010, at *2; *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *4 (C.D. Cal. July 25, 2019).

*Third*, typicality is established. Typicality is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members. *See Amchem*, 521 U.S. at 625 (common-issues test readily met in securities cases). Differences in the amount of damage, size or manner of purchase, nature of the purchase, and date of purchase also will not defeat class certification. *See Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991). Typicality exists "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1155 (S.D. Cal. 2007), *aff'd*, 660 F.3d 1055 (9th Cir. 2011). Here, Lead Plaintiffs' claims arise from the same events or course of conduct that give rise to claims of other Settlement Class Members, and the claims asserted are based on the same legal theory. *See In re Silver Wheaton Corp. Sec. Litig.*, 2017 WL 2039171, at *7 (C.D. Cal. May 11, 2017) (finding typicality when "like all members of the proposed Class, plaintiffs purchased Silver Wheaton common stock during the Class Period and were allegedly damaged by the same misstatements and omissions by Silver Wheaton").

*Fourth*, adequacy is established. To satisfy Rule 23(a)'s adequacy requirement, the class representatives must show that they will fairly and adequately protect the interests of the Settlement Class. The proposed class representative must

be free of interests that are antagonistic to the other members of the class, and counsel representing the class must be qualified, experienced, and capable of conducting the litigation. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020. Here, Lead Plaintiffs have claims that are typical of, and coextensive with, those of the Settlement Class. Lead Plaintiffs have also retained counsel highly experienced in securities class action litigation who have successfully prosecuted many securities class actions. Thus, Lead Plaintiffs are adequate representatives of the Settlement Class, and their counsel are qualified, experienced, and capable of prosecuting this Action.

**B. The Proposed Settlement Class Satisfies Rule 23(b)**

Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods of adjudication. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 525 (N.D. Cal. 2009).

*First*, there are a number of common questions of law and fact that predominate. These questions clearly predominate over individual questions because Defendants' alleged misconduct affected all Settlement Class Members in the same manner. *See, e.g.*, *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009) ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages."). Indeed, issues relating to Defendants' liability are common to all members of the Settlement Class. *Id.*; *see LDK Solar*, 255 F.R.D. at 530. Falsity, materiality, scienter, and loss causation are issues that "affect investors alike," and whose proof "can be made on a class-wide basis" because they "affect[] investors in common." *Schleicher v. Wendt*, 618 F.3d 679, 685, 687 (7th Cir. 2010).

*Second*, a class action is the superior method available to fairly and efficiently adjudicate this Action. The superiority of class actions to resolve the claims of a

large, geographically dispersed class of investors in securities fraud cases is well recognized. *See Amchem*, 521 U.S. at 625. Thus, all of the requirements of Rule 23(a) and (b) are satisfied, and there is nothing preventing the Court from certifying this Settlement Class for settlement purposes, appointing Lead Plaintiffs as class representatives, and appointing Lead Counsel as counsel for the Settlement Class.

## VI. THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

Rule 23(c)(2)(B) requires that notice to class members of the pendency of the Action and their right to request exclusion be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In addition, Rule 23(e)(1)(B) requires that notice of a class action settlement be directed "in a reasonable manner to all class members who would be bound by the" proposed settlement. The settlement notice "must 'generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012). Here, the proposed Notice and the method of disseminating the Notice satisfy all these standards.

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator, Kroll Settlement Administration, will disseminate the Notice and Claim Form (Exhibits A-1 and A-2 to the Preliminary Approval Order) by first-class mail or email to all Settlement Class Members who can be identified with reasonable effort. The Claims Administrator will send Notices to shareholders identified by Edwards and will utilize a proprietary list of the largest and most common banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice to potential Settlement Class Members. In addition, a Summary Notice will be published in *The Wall Street Journal* and transmitted over *PR Newswire*.

Lead Counsel will also make copies of the Notice and Claim Form available for download via the website to be established by the Claims Administrator, www.EdwardsLifesciencesSecuritiesLitigation.com. The website will provide copies of the Complaint, the Stipulation, and other documents related to the Action and proposed Settlement.

The proposed Notice includes all the information required by Rule 23 and the PSLRA, as well as additional information. The proposed Notice describes the essential terms of the Settlement and sets forth, among other things: (i) the nature, history and status of the litigation; (ii) the definition of the Settlement Class and who is excluded from the Settlement Class; (iii) the reasons the parties have proposed the Settlement; (iv) the amount of the Settlement; (v) the estimated average recovery per damaged share; (vi) the Settlement Class's claims and issues; (vii) the Parties' disagreement over damages and liability; (viii) the maximum amount of attorneys' fees and expenses that Lead Counsel intends to seek in connection with final settlement approval; (ix) the proposed plan for allocating the Settlement proceeds to the Settlement Class; and (x) the date, time and place of the final settlement hearing. Further, the proposed Notice discusses the rights Settlement Class Members have in connection with the Settlement, including: (i) the right to request exclusion from the Settlement Class and the method for doing so; (ii) Settlement Class Members' right to object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (iii) the right to participate in the Settlement and instructions on how to complete and submit a Claim Form.

Courts routinely find that comparable notice procedures meet the requirements of due process, Rule 23, and the PSLRA. *E.g.*, *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *4 (S.D. Cal. Oct. 30, 2020) (approving comparable notice plan); *In re Banc of California Sec. Litig.*, 2019 WL 6605884, at *3 (C.D. Cal. Dec. 4, 2019) (same). Accordingly, Lead Plaintiffs respectfully request that the Court also approve the proposed form and method of

giving notice to the Settlement Class.

## VII. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court is being requested to also set dates for certain future events (*i.e.*, mailing of the Notice and publication of the Summary Notice, filing of supporting briefs, deadlines for requesting exclusion from the Settlement Class, objecting to the Settlement, submitting claim forms, and the fairness hearing). Lead Plaintiffs propose the following schedule, which is based on the date the Preliminary Approval Order is entered and the date for which the Settlement Hearing is scheduled:

| **Event** | **Time for Compliance** | **Proposed Calendar Dates**[4] |
|---|---|---|
| Deadline to commence mailing the Notice and Claim Form to Settlement Class Members ("Notice Date") | 20 business days after the entry of the Preliminary Approval Order (Preliminary Approval Order ¶7(b)) | August 10, 2026 |
| Deadline for publishing the Summary Notice | 10 business days after the Notice Date (*Id.* ¶7(d)) | August 24, 2026 |
| Deadline for filing papers in support of final settlement approval, the Plan of Allocation, and the request for attorneys' fees and Litigation Expenses | 35 calendar days before the date scheduled for the Settlement Hearing (*Id.* ¶27) | September 16, 2026 |
| Deadline for requesting exclusion from the Settlement Class or filing an objection to the Settlement | 21 calendar days before the date of the Settlement Hearing (*Id.* ¶¶14, 17-18) | September 30, 2026 |

[4] The "Proposed Calendar Dates" are representative dates that would apply if the Court entered the Preliminary Approval Order on July 13, 2026 and set the Settlement Hearing for October 21, 2026 (i.e., 100 calendar days following the date of entry of the Preliminary Approval Order).

| | | |
|---|---|---|
| Deadline for filing reply papers | 7 calendar days before the Settlement Hearing (*Id.* ¶27) | October 14, 2026 |
| Settlement Hearing | At the Court's convenience, at least 100 calendar days following the date of entry of the proposed Preliminary Approval Order (*Id.* ¶5) | October 21, 2026 |
| Deadline for submitting Claim Forms | 120 calendar days following the Notice Date (*Id.* ¶11) | December 8, 2026 |

If the Court agrees with the proposed schedule, Lead Plaintiffs request that the Court schedule the Settlement Hearing for a date 100 calendar days after the date of entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. For example, if the Court enters the Preliminary Approval Order by July 13, 2026, Lead Plaintiffs request that the Court schedule the Settlement Hearing for October 21, 2026, or at the earliest date thereafter on which the Court's schedule will allow the hearing.

## VIII. CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully submit that the proposed Settlement is a fair and reasonable resolution of the Action and warrants this Court's preliminary approval. Lead Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order submitted herewith, which will: (i) preliminarily approve the proposed Settlement; (ii) approve the form and manner of giving notice of the Settlement to the Settlement Class; and (iii) schedule a hearing date and time to consider final approval of the Settlement and related matters.

Dated: July 1, 2026

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ *Jeremy P. Robinson*
Salvatore J. Graziano (*pro hac vice*)
Jeremy P. Robinson (*pro hac vice*)
Thomas Z. Sperber (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
salvatore@blbglaw.com
jeremy@blbglaw.com
thomas.sperber@blbglaw.com

-and-

Jonathan D. Uslaner (Bar No. 256898)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3481
jonathanu@blbglaw.com

*Lead Counsel for Lead Plaintiffs Louisiana Sheriffs' Pension & Relief Fund and City of Fort Lauderdale Police & Firefighters' Retirement System and the Settlement Class*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON, P.A.**
Robert D. Klausner
7080 Northwest 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
bob@robertdklausner.com

*Additional Counsel for Lead Plaintiffs Louisiana Sheriffs' Pension & Relief Fund and City of Fort Lauderdale Police & Firefighters' Retirement System*