**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
JONATHAN D. USLANER (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Tel: (310) 819-3481

*Lead Counsel for Lead Plaintiffs Louisiana Sheriffs' Pension & Relief Fund and City of Fort Lauderdale Police & Firefighters' Retirement System and the Settlement Class*

[Additional counsel appear on signature page.]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

DHIMANT PATEL, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

EDWARDS LIFESCIENCES CORPORATION and BERNARD J. ZOVIGHIAN,

Defendants.

Case No. 8:24-cv-02221-AH-KES

**LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**

Date: December 16, 2026
Time: 1:30 P.M.
Courtroom: 9C, 9th Floor
Judge: Hon. Anne Hwang

# NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 16, 2026, at 1:30 p.m., in Courtroom 9C of the Felicitas and Gonzalo Mendez United States Courthouse, 350 W 1st Street, Los Angeles, CA 90012, the Honorable Anne Hwang presiding, the Court-appointed Lead Plaintiffs will and hereby do move, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, for entry of (1) a judgment granting final approval of the proposed settlement of the above-captioned securities class action (the "Settlement"); and (2) an order granting approval of the proposed plan for allocating the net settlement proceeds (the "Plan of Allocation" or "Plan").

This motion is made pursuant to the Court's August 3, 2026 Order granting preliminary approval of the Settlement (ECF No. 103) ("Preliminary Approval Order") and is based upon: (1) this Notice of Motion; (2) the supporting Memorandum of Points and Authorities set forth below; (3) the accompanying Declaration of Jeremy P. Robinson and the exhibits attached thereto; (4) the Stipulation and Agreement of Settlement dated July 1, 2026 (ECF No. 100-1) filed previously with the Court; (5) the pleadings and records on file in this action; and (6) other such matters and argument as the Court may consider at the hearing of this motion.

Pursuant to the Preliminary Approval Order, any objections to the Settlement or the Plan of Allocation and any requests for exclusion from the Settlement Class must be received by December 2, 2026. To date, no objections to the Settlement or Plan of Allocation have been received. Proposed orders will be submitted with Lead Plaintiffs' reply submission, which will be filed on December 9, 2026, after the deadline for objections and exclusions has passed.

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. THE SETTLEMENT WARRANTS FINAL APPROVAL ..... 4

A. Lead Plaintiffs and Lead Counsel Have Adequately Represented the Class ..... 6

B. The Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced Mediator Following Substantial Discovery ..... 7

C. The Relief Provided for the Class is Adequate Considering the Costs, Risks, and Delay of Further Litigation and Other Relevant Factors ..... 8

1. The Amount Offered in the Settlement Weighs in Favor of Final Approval ..... 8

2. The Settlement Weighs the Strength of Lead Plaintiffs' Claims with the Substantial Risks of Continuing Litigation ..... 10

3. The Proposed Method for Distributing Relief to the Settlement Class is Effective ..... 14

4. Lead Counsel's Fee and Expense Request is Fair and Reasonable ..... 15

5. The Parties Have No Side Agreements Other Than the Standard Supplemental Agreement Concerning Opt-Outs ..... 15

6. All Class Members are Treated Equitably ..... 16

D. The Extent of Discovery Completed and the Stage of the Proceedings Favor Final Settlement Approval ..... 16

E. The Risk of Maintaining a Class Action Through Trial Supports Approval ..... 17

F. The Experience and Views of Counsel Favor Settlement ..... 18

G. The Reaction of the Settlement Class ..... 19

III. THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE ..... 20

IV. NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA ..... 22

V. THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS ..... 24

VI. CONCLUSION ..... 24

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865 (C.D. Cal. July 28, 2014) .......... 17

*In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .......... 4, 11, 16

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) .......... 6

*In re Banc of Cal. Sec. Litig.*, 2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) .......... 7, 8

*Baron v. HyreCar Inc.*, 2024 WL 3504234 (C.D. Cal. July 19, 2024) .......... 9

*In re Biolase, Inc. Sec. Litig.*, 2015 WL 12697736 (C.D. Cal. June 5, 2015) .......... 6

*In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .......... 18, 20

*In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153007 (C.D. Cal. Sept. 14, 2005) .......... 9

*Brown v. China Integrated Energy Inc.*, 2016 WL 11757878 (C.D. Cal. July 22, 2016) .......... 10

*In re Celera Corp. Sec. Litig.*, 2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) .......... 13

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) .......... 13

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) .......... 20

*Destefano v. Zynga, Inc.*, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .......... 23

*Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316 (C.D. Cal. June 12, 2014) .......... 17

*In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770 (N.D. Cal. July 22, 2019) .......... 8, 10, 18

*Farrar v. Workhorse Grp., Inc.*,
2023 WL 5505981 (C.D. Cal. July 24, 2023) ........ 9

*Garner v. State Farm Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........ 4, 10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........ 3, 5, 10, 19, 20

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ........ 14, 23

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ........ 7, 20

*Hill v. Canidae Corp.*,
2021 WL 4988032 (C.D. Cal. Apr. 2, 2021) ........ 7

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........ 11

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ........ 13

*Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ........ 10, 23

*Lembeck v. Arvest Cent. Mortg. Co.*,
2021 WL 5494940 (N.D. Cal. Aug. 26, 2021) ........ 8

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) ........ 18, 19

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019) ........ 8, 16

*Murphy v. Precision Castparts Corp.*,
2021 WL 2080016 (D. Or. May 24, 2021) ........ 11

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) ........ 10, 14, 16

*Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) ........ 13, 20

*Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
688 F.2d 615 (9th Cir. 1982) ........ 4, 5, 9

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........ 20

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010) ........ 10

*Roberti v. OSI Sys., Inc.*,
2015 WL 8329916 (C.D. Cal. Dec. 8, 2015) ........ 7

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ........ 18

*Sudunagunta v. NantKwest, Inc.*,
2019 WL 2183451 (C.D. Cal. May 13, 2019) ........ 14, 16

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ........ 4

*Todd v. STAAR Surgical Co.*,
2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ........ 17

*Wang v. Dada Nexus Ltd.*,
2025 WL 1722997 (C.D. Cal. Mar. 14, 2025) ........ 15

*Weeks v. Kellogg Co.*,
2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ........ 7

*In re Zynga Inc. Sec. Litig.*,
2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ........ 16

**STATUTES & RULES**

15 U.S.C. § 78u-4(a)(7) ........ 23

Fed. R. Civ. P. 23(c)(2)(B) ........ 23

Fed. R. Civ. P. 23(e)(2) ........ 4, 5, 6, 10, 14, 15

**MEMORANDUM OF POINTS AND AUTHORITIES**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs Louisiana Sheriffs' Pension & Relief Fund ("Louisiana Sheriffs") and City of Fort Lauderdale Police & Firefighters' Retirement System ("Fort Lauderdale P&F") (together, "Lead Plaintiffs") respectfully submit this memorandum of law in support of their motion for final approval of the Settlement and approval of the proposed Plan of Allocation.[1]

## I. INTRODUCTION

After nearly two years of hard-fought litigation—including an extensive investigation, substantial fact discovery, and arm's-length negotiations facilitated by an experienced mediator—Lead Plaintiffs have reached a proposed Settlement for $39,000,000 in cash. Subject to the Court's final approval, the proposed Settlement will resolve all claims asserted in the Action. The Settlement is a favorable result for the Settlement Class and readily satisfies the standards for final approval under Rule 23(e)(2).

The Settlement provides a considerable benefit to the Settlement Class. It confers a substantial, certain, and near-term recovery, while avoiding the significant risks and expense of continued litigation, including the risk that the Settlement Class

---

[1] Unless otherwise noted, capitalized terms have the meaning set forth in the Stipulation and Agreement of Settlement dated July 1, 2026 (ECF No. 100-1) (the "Stipulation") or the accompanying Declaration of Jeremy P. Robinson in Support of (A) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and (B) Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Robinson Declaration" or "Robinson Decl."). Lead Plaintiffs respectfully refer the Court to the Robinson Declaration for a detailed description of the claims asserted, the procedural history of the Action, the negotiations resulting in the Settlement, the risks of continued litigation, compliance with the Court-approved notice plan, and the Plan of Allocation. Citations to "¶ __" herein refer to paragraphs in the Robinson Declaration and citations to "Ex. __" herein refer to exhibits to the Robinson Declaration.

would recover nothing or less than the Settlement Amount after years of extensive litigation and delay.

The Settlement is particularly favorable in light of the risks of continued litigation. While Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants are meritorious, they recognize that the Action presented substantial risks to establishing Defendants' liability, including in proving scienter, falsity, loss causation, and damages. While scienter can be a challenge in any securities case, here, this issue presented a particularly acute risk. In its order on the motion to dismiss, the Court dismissed all claims against every executive defendant except Zovighian and expressly stated that the issue of Zovighian's scienter "is a very close one." ECF No. 72 at 21 n.10. The Court also proposed phased discovery focused on the issue of Zovighian's scienter as well as early motion practice directed at that issue. Pursuant to the Court's suggestions, the Parties thereafter agreed to a phased discovery plan focused first on Zovighian's knowledge and scienter, and Defendants advised the Court that they anticipated moving for summary judgment on that "discrete issue." ECF No. 82 at 7-9. Had Defendants prevailed on that issue, the Settlement Class would have recovered nothing.

Defendants also vigorously contested falsity, loss causation, and damages, arguing, among other things, that nearly all of the remaining challenged statements were forward-looking, that Edwards had warned investors that TAVR growth might slow, and that Edwards' July 24, 2024 announcement of "lower-than-expected growth in TAVR" merely revised forward-looking guidance and reported financial results. ¶¶ 13-15, 69-74. Defendants also insisted that Lead Plaintiffs could not prove loss causation and that the Settlement Class suffered no damages at all. ¶¶ 15-17, 74-75. Had the Court, a jury, or an appellate court accepted any of these arguments, either in whole or in part, damages would have been reduced dramatically or eliminated entirely with no recovery at all for the proposed Settlement Class.

By the time the Parties agreed to the Settlement, Lead Plaintiffs had developed a comprehensive understanding of the strengths and weaknesses of the claims and defenses asserted in this Action. The Settlement is the product of Lead Plaintiffs' extensive litigation efforts, including: (1) completing a thorough investigation of the claims at issue, including interviewing 28 former Edwards employees; (2) preparing and filing a detailed amended complaint; (3) opposing Defendants' motion to dismiss the amended complaint and preparing for the hearing on that motion; and (4) conducting substantial fact discovery on the dispositive question of Zovighian's scienter, including obtaining and analyzing more than 125,000 pages (over 23,500 documents) produced by Defendants. ¶¶ 25-37, 41-54.

In addition, the Parties engaged in extensive arm's-length settlement negotiations, including during a full-day, in-person mediation session on April 20, 2026, conducted under the supervision of Jed D. Melnick of JAMS, an experienced mediator in complex litigation. ¶¶ 9, 58-61. In an effort to bridge the gap between the Parties at the conclusion of the mediation, Mr. Melnick issued a mediator's recommendation that the Action be settled for $39,000,000 in cash, which the Parties accepted. ¶ 61.

In light of the result achieved, the risks of continued litigation, and the substantial delay that would accompany ongoing litigation of this Action through the completion of fact and expert discovery, class certification, summary judgment, trial, and post-verdict appeals, Lead Plaintiffs and Lead Counsel respectfully submit that the Settlement is a favorable result for the Settlement Class. Each of the factors set forth by the Ninth Circuit in *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1026 (9th Cir. 1998) and Rule 23(e)(2) supports final approval. The Settlement represents a meaningful portion of the Settlement Class's maximum realistic trial damages; was the product of a recommendation by an independent mediator; and is endorsed by Lead Plaintiffs, who are sophisticated institutional investors. Accordingly, Lead

Plaintiffs respectfully submit that the Court should approve the Settlement as fair, reasonable, and adequate.

Lead Plaintiffs also request that the Court approve the proposed Plan of Allocation for the Net Settlement Fund. The Plan of Allocation is designed to distribute equitably the Net Settlement Fund proceeds to Authorized Claimants. The Plan was developed by Lead Counsel in consultation with Lead Plaintiffs' damages consultant, who calculated the estimated alleged artificial inflation in the price of Edwards common stock during the Class Period, and is substantially similar to numerous other plans of allocation that have been approved in this District and around the country as fair and reasonable.

## II. THE SETTLEMENT WARRANTS FINAL APPROVAL

The Ninth Circuit has long recognized the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *2 (C.D. Cal. Oct. 25, 2016) (same). The Ninth Circuit has emphasized that "voluntary conciliation and settlement are the preferred means of dispute resolution," and that this is "especially true in complex class action litigation." *Officers for Justice v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). Settlements of complex cases, such as this one, greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of claims. *See, e.g.*, *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("'Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.'").

Under Rule 23(e)(2), the Court should approve a proposed class action settlement if it finds it to be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In determining whether a proposed settlement is "fair, reasonable, and adequate," the

Court considers whether: (1) the class representatives and counsel have adequately represented the class; (2) the proposed settlement was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposed settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

The Ninth Circuit also considers the following *Hanlon* factors in determining whether a proposed class action settlement is fair, reasonable, and adequate: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

The Court considers the settlement taken as a whole, rather than its individual component parts, and examines it for overall fairness. *See Hanlon*, 150 F.3d at 1026. The question is "not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id*. at 1027. The Court's assessment is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.* at 1027.

As discussed below, the Rule 23(e)(2) and *Hanlon* factors strongly support a finding that the Settlement is fair, reasonable, and adequate, and warrants final approval.

### A. Lead Plaintiffs and Lead Counsel Have Adequately Represented the Class

In determining whether to approve a class action settlement, the Court considers whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "'Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'" *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12697736, at *4 (C.D. Cal. June 5, 2015). Here, there is no conflict between Lead Plaintiffs and the Settlement Class. Lead Plaintiffs and the other Settlement Class Members all purchased Edwards common stock during the Class Period and were damaged by the same allegedly false and misleading statements. If Lead Plaintiffs proved their claims at trial, they would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).

Further, Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class in both their vigorous prosecution of the Action and in the negotiation and achievement of the Settlement. Lead Plaintiffs ably oversaw the prosecution of the Action; responded to Defendants' discovery requests; and evaluated and approved the Settlement. *See* Wenguer Decl. (Ex. B), ¶ 5; McGee Decl. (Ex. C), ¶ 5. Lead Counsel is highly qualified and experienced in securities litigation, as set forth in its firm resume (*see* Ex. 4 to Ex. E1), and effectively led the prosecution of the litigation against skilled and experienced opposing counsel.

### B. The Settlement Was Negotiated at Arm's Length with the Assistance of an Experienced Mediator Following Substantial Discovery

Courts have found that a strong presumption of fairness attaches to a proposed settlement if the settlement is reached in good faith after well-informed arm's length negotiations. *See Weeks v. Kellogg Co.*, 2013 WL 6531177, at *12 (C.D. Cal. Nov. 23, 2013); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *3 (C.D. Cal. June 10, 2005). The presumption applies here. As discussed in the Robinson Declaration, the Settlement was reached after Lead Counsel had conducted an extensive investigation of the claims; obtained and reviewed more than 125,000 pages of documents produced by Defendants; had started preparing for depositions; exchanged detailed submissions with Defendants regarding the strengths, weaknesses, and risks of the claims and defenses; and engaged in extensive settlement negotiations. ¶¶ 25-30, 48-54. As a result, by the time the Settlement was reached, Lead Plaintiffs and Lead Counsel possessed a thorough understanding of the strengths and weaknesses of the Settlement Class's claims and Defendants' defenses.

Moreover, the Settlement was secured only after the Parties participated in a mediation process before Mr. Melnick, an experienced mediator of complex litigation. Courts find that "'[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.'" *Roberti v. OSI Sys., Inc.*, 2015 WL 8329916, at *3 (C.D. Cal. Dec. 8, 2015); *see also Hill v. Canidae Corp.*, 2021 WL 4988032, at *8 (C.D. Cal. Apr. 2, 2021) ("The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive."); *In re Banc of Cal. Sec. Litig.*, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019) (that settlement was reached after "significant arms-length negotiations with a third-party mediator" was an "important factor" in finding settlement "fair, reasonable, and appropriate").

The Parties' settlement negotiations and mediation efforts in this case were substantial. The Parties exchanged and submitted detailed mediation statements and participated in a full-day mediation session before Mr. Melnick on April 20, 2026. ¶¶ 58-62. The negotiations between the Parties during the mediation process were extensive and hard-fought. ¶ 61. Even after those negotiations, the Parties were far apart, so Mr. Melnick had to make a mediator's recommendation to bridge the gap between the Parties: Mr. Melnick recommended that the Parties settle the Action for $39,000,000, and the Parties accepted that recommendation. *Id.*

These facts further demonstrate the Parties' good-faith arm's-length negotiations and support approval of the Settlement. *See, e.g., Lembeck v. Arvest Cent. Mortg. Co.*, 2021 WL 5494940, at *4 (N.D. Cal. Aug. 26, 2021) (finding that a settlement "was negotiated at arms' length and under circumstances evidencing a lack of collusion" where it was reached following a mediation with Mr. Melnick).

### C. The Relief Provided for the Class is Adequate Considering the Costs, Risks, and Delay of Further Litigation and Other Relevant Factors

#### 1. The Amount Offered in the Settlement Weighs in Favor of Final Approval

The $39 million cash Settlement constitutes a meaningful percentage of the maximum recovery for the Settlement Class, especially taking into account the uncertainty, risks, and costs associated with attempting to obtain a greater amount. *See Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) ("Based on the significant risks of continued litigation and the Settlement amount, the Court finds that the amount offered for settlement is fair."). To evaluate the adequacy of the settlement amount, courts primarily consider "plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019). In undertaking this analysis, "'[i]t is well-settled law that a cash settlement amounting to only a

fraction of the potential recovery will not per se render the settlement inadequate or unfair.'" *Officers for Justice*, 688 F.2d at 628.

Lead Plaintiffs' damages consultant estimated the reasonably likely maximum class-wide damages in this case, assuming Lead Plaintiffs and the proposed class prevailed on all liability issues, at approximately $1.36 billion based on a conservative methodology and assuming no disaggregation. ¶¶ 17, 83. The Settlement represents approximately 2.8% of that figure. *Id.*; ECF No. 103 at 12.

Importantly, the $1.36 billion figure assumes Lead Plaintiffs' ***complete success*** in establishing Defendants' liability, and that the trier of fact would reject ***all*** of Defendants' arguments on damages. ¶ 83. In reality, Defendants would have vigorously contested damages. If, for example, Defendants were to prevail on their argument that the putative Class Period had to be cut in half and reduced only to the second quarter of 2024, the maximum damages Lead Plaintiffs could demonstrate, even if successful on every other liability issue through every stage of the litigation, would be slashed to approximately $850 million. Compared against that figure, the Settlement represents approximately 4.6% of maximum damages. ¶¶ 17, 84-85.

In granting preliminary approval, the Court found that, "[c]onsidering the risk and expense of further litigation, the proposed settlement amount is comparable to settlement recoveries approved in other securities class actions." ECF No. 103 at 12. Indeed, whether measured against the maximum damages for the full class period or without the first quarter of 2024, the Settlement Amount is a decidedly favorable result in the face of significant litigation risk. *See, e.g.*, *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *8 (C.D. Cal. July 19, 2024) (approving settlement that "reflects an approximately 2% recovery" of maximum damages); *Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (approving settlement representing "an approximately 3% recovery" on the maximum aggregate damages); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153007, at *6 (C.D. Cal. Sept. 14, 2005)

(approving settlement representing 2.7% of damages and finding such percentage was "not … inconsistent with the average recovery in securities class action[s]").

**2. The Settlement Weighs the Strength of Lead Plaintiffs' Claims with the Substantial Risks of Continuing Litigation**

In assessing "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "'the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial.'" *Extreme Networks*, 2019 WL 3290770, at *8 (citing *Hanlon*, 150 F.3d at 1026). Courts favor settlements as they conserve valuable judicial resources and avoid further "protracted and uncertain litigation" and "subsequent appeals." *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004); *see Garner*, 2010 WL 1687832, at *10 ("'Settlement avoids the complexity, delay, risk and expense of continu[ed] … litigation" and "produce[s] a prompt, certain, and substantial recovery for the … class.'"). "'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *7 (C.D. Cal. July 22, 2016).

Here, Lead Plaintiffs considered the many costly milestones that remain in this litigation. Courts recognize that "securities fraud class actions are complex cases that are time-consuming and difficult to prove." *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019); *see also Extreme Networks*, 2019 WL 3290770, at *8 ("Securities actions in particular are often long, hard-fought, complicated, and extremely difficult to win"). Complex securities fraud class actions, such as this one, present myriad risks that plaintiffs must overcome to secure a recovery through a judgment. *See, e.g., In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where

plaintiff failed to establish a triable issue on loss causation); *Murphy v. Precision Castparts Corp.*, 2021 WL 2080016, at *5 (D. Or. May 24, 2021) (granting summary judgment after more than five years of litigation in light of new Ninth Circuit precedent, finding that plaintiffs failed to establish falsity and loss causation).

As to "scienter," Defendants insisted that CEO Zovighian did not act with any fraudulent intent. ¶ 70. Establishing a defendant's state of mind in a securities case "is the most difficult element of proof and one that is rarely supported by direct evidence." *Amgen*, 2016 WL 10571773, at *3; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (noting that scienter is "complex and difficult to establish at trial"). Here, the risk was particularly acute. In its decision on Defendants' motion to dismiss, the Court dismissed every executive defendant except Zovighian, found that Zovighian's stock sale and compensation did not by themselves support scienter, and described the question of Zovighian's scienter as "a very close one." ECF No. 72 at 20-22 & n.10. The Court further stated that it would "consider phased discovery limited to the issue of Zovighian's knowledge and scienter, as well as early motion practice, or other potential relief requested by Defendants." *Id.* at 21 n.10. The Court's invitation to phased discovery and "early motion practice" on this issue, *id.*, and Defendants' stated intention to move for summary judgment on it, ECF No. 82 at 7, meant that Lead Plaintiffs faced the very real prospect that the entire case would turn on a single, early, contested question—whether Zovighian acted with scienter—on which the Court had already signaled that the question was "a very close one."

In support of their position that Zovighian did not act with scienter, Defendants pointed to the Court's ruling on the motion to dismiss and the documents that they produced in Phase I discovery to argue that Zovighian lacked culpable knowledge. Defendants argued that the documents showed Zovighian believed in good faith in the Company's TAVR guidance and did not possess contrary information, and that

they would prevail on their early summary judgment motion. ¶ 70; *see also* ECF No. 92 at 3 (asserting that the documents Zovighian received around the time of his statements "show he believed those targets were attainable"). Defendants also emphasized that TAVR sales grew in 2023 and 2024. *Id*. Had Defendants prevailed on Zovighian's scienter at summary judgment, the Settlement Class would have recovered nothing.

Defendants also vigorously disputed falsity. Because the Court found that nearly all of the remaining challenged statements were forward-looking, Defendants argued that liability required proof both that their cautionary statements about slowing TAVR growth were insufficient and that they had actual knowledge—not merely recklessness—that their statements were false. ¶ 72. Defendants pointed to cautionary statements in Edwards' SEC filings and to Edwards' reported results, including first quarter 2024 TAVR sales growth and full-year 2024 TAVR sales of $4.1 billion, to argue that the guidance was correct and no statements were misleading. *Id.*; ECF No. 62 at 1-2, 8-9. Although these arguments did not prevail at the pleading stage, the Court determined that they were "better resolved at a later stage," and Defendants would have pressed them at summary judgment and trial. ¶ 72.

As to "loss causation," Defendants argued that the decline in the price of Edwards common stock following Edwards' July 24, 2024 announcement was not caused by the revelation of any fraud. To that end, Defendants argued that the July 24, 2024 announcement merely revised forward-looking guidance and reported financial results, and Edwards had warned that TAVR sales could be affected by many factors, including hospital capacity constraints. ¶¶72, 74.

Even setting those arguments aside, Defendants would have argued that they could not be liable for allegedly misleading TAVR guidance during the first quarter of 2024—roughly the first half of the Class Period—because no actual TAVR results

existed at that time that could have rendered the full-year guidance misleading. ¶ 75. If credited, that argument would have reduced the reasonably likely maximum class-wide damages from approximately $1.36 billion to approximately $850 million. *Id*.

Lead Plaintiffs believe that their claims had merit and that they had responses to Defendants' arguments. However, there was a significant risk that a jury, the Court, or the Ninth Circuit could side with Defendants. *See In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury returned a verdict for defense after trial in securities fraud class action, finding that defendants were not liable for securities fraud).

Moreover, the resolution of the disputed issues regarding loss causation and damages would have come down to a "battle of experts," and Defendants would invariably offer a well-qualified expert who would opine that the Settlement Class had little or no damages. As courts have long recognized, the uncertainty as to which side's expert might be credited by the jury presents a substantial litigation risk, and supports the reasonableness of a settlement in a securities class action. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) (damages in a securities action would come down to a "'battle of experts' … with no guarantee whom the jury would believe"); *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (risks related to the "'battle of the experts'" supported approval of settlement); *Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) ("Proving and calculating damages require[s] a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law. The outcome of that analysis is inherently difficult to predict and risky.").

Moreover, absent settlement now, the Parties might face years litigating this Action to a final resolution, including further fact discovery, expert discovery, a motion for class certification, summary judgment motions, a jury trial (which was not scheduled to commence until February 15, 2028), and likely post-trial appeals. *See*

*Sudunagunta v. NantKwest, Inc.*, 2019 WL 2183451, at *4 (C.D. Cal. May 13, 2019) (finding the likelihood of "further deposition and expert discovery, motion practice, trial, and potentially appeals following trial" to favor settlement); *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 527 ("even if [a jury] did reach unanimous verdicts, it is likely that an appeal would have followed").

### 3. The Proposed Method for Distributing Relief to the Settlement Class is Effective

In evaluating a settlement, the Court may also consider "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund. Kroll Settlement Administration ("Kroll"), the Court-approved Claims Administrator, will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation) after Court approval. Claims processing like the method proposed here is both standard and effective in securities class action settlements. *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018) ("The Court further finds that the proposed claims process provides an effective method of implementing that plan by ensuring that the claimant provides sufficient information to calculate the recognized loss amount. Therefore, this factor weighs in favor of approval").

**4. Lead Counsel's Fee and Expense Request is Fair and Reasonable**

The relief provided to proposed Settlement Class Members from the Settlement is adequate, including considering the costs, risks, and delay of trial and appeal and the terms and timing of the proposed award of attorneys' fees. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the accompanying Fee Memorandum, the requested attorneys' fees of 25% of the Settlement Fund, to be paid upon the Court's approval, are reasonable in light of the substantial efforts devoted by Plaintiffs' Counsel, the recovery obtained for the Settlement Class, and the significant risks that Plaintiffs' Counsel confronted. Moreover, the request for attorneys' fees is consistent with the Ninth Circuit's "benchmark" award in common fund cases and is within the range of fee percentages awarded to counsel in comparable class actions in this Circuit. *See* Fee Memorandum at §2.B. The approval of attorneys' fees is entirely separate from the approval of the Settlement, and neither Lead Plaintiffs nor Lead Counsel may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. Stipulation ¶ 16.

**5. The Parties Have No Side Agreements Other Than the Standard Supplemental Agreement Concerning Opt-Outs**

Lastly, as previously disclosed, the only agreement the Parties entered into, other than the Stipulation itself, is a standard confidential Supplemental Agreement providing Defendants with the right to terminate the Settlement if timely and valid requests for exclusion from the Settlement Class exceed a threshold agreed to by Lead Plaintiffs and Defendants. *See* Stipulation ¶ 36. Such agreements are common in securities class action settlements, and do not weigh against final approval. *See Wang v. Dada Nexus Ltd.*, 2025 WL 1722997, at *6 (C.D. Cal. Mar. 14, 2025) (finding that an opt-out agreement "'is common in securities fraud actions and does not weigh against approval of the settlement.'").

**6. All Class Members are Treated Equitably**

Rule 23(e) also includes consideration of whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). As described herein, the proposed Plan of Allocation is fair, reasonable, and adequate because it does not treat Lead Plaintiffs or any other Settlement Class Member preferentially. *See In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015) (finding the plan of allocation "distributes the funds without giving undue preferential treatment to any class members"). Under the Plan of Allocation, Settlement Class Members who submit timely claims will receive payments based on the timing and number of shares they purchased and the extent of their injury related to the alleged fraud. Lead Plaintiffs, just like all other Settlement Class Members, will be subject to the same formula for distribution of the Settlement. Thus, this factor weighs in favor of approval. *See Mild*, 2019 WL 3345714, at *6.

**D. The Extent of Discovery Completed and the Stage of the Proceedings Favor Final Settlement Approval**

In assessing a class action settlement, courts also consider whether plaintiffs and their counsel had sufficient information to "make an informed decision about the merits of their case." *Amgen*, 2016 WL 10571773, at *4. Specifically, "a settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Nat'l Rural Telecomm. Coop.*, 221 F.R.D. at 528; *see also Sudunagunta*, 2019 WL 2183451, at *4 (finding "review and analysis of over 140,000 pages of documents" and "extensive adversarial motion practice, including motions to dismiss" supportive of final approval).

Here, Lead Plaintiffs' decision to enter into the Settlement was based on their thorough understanding of the strengths and weaknesses of their claims and Defendants' defenses. Lead Plaintiffs and Lead Counsel had a comprehensive understanding of the case and evidence through their (1) extensive investigation,

which included interviews of 28 former Edwards employees; (2) preparing and filing a detailed amended complaint; (3) defeating in part Defendants' motion to dismiss; (4) conducting substantial Phase I fact discovery on Zovighian's scienter, including obtaining and analyzing more than 125,000 pages (over 23,500 documents) produced by Defendants, and pressing a discovery dispute before Magistrate Judge Karen E. Scott; (5) preparing a detailed mediation statement; and (6) preparing for and participating in a full-day mediation session under the oversight of an experienced mediator.

In sum, when the Settlement was reached, Lead Plaintiffs and Lead Counsel had ample information to assess the strengths and weaknesses of their case and "to effectively evaluate […] the advantages of the settlement." *Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at *8 (C.D. Cal. June 12, 2014). This factor weighs in favor of final approval of the Settlement. *See Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *4 (C.D. Cal. Oct. 24, 2017) (final settlement approval supported where the "parties engaged in extensive adversarial motion practice" and "researched, prepared, and drafted comprehensive mediation briefs").

### E. The Risk of Maintaining a Class Action Through Trial Supports Approval

Lead Plaintiffs believe they had compelling arguments in favor of class certification. However, even if a class were certified, there would always be the chance that the Action might not have been maintained as a class through trial, or the class period would have been narrowed. *See In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *11 (C.D. Cal. July 28, 2014) ("Even had the court certified a class, … subsequent facts adduced through discovery might have led to decertification. Avoiding such a risk … favors approval of the settlement."). At the class certification stage, Defendants would have launched vigorous challenges on multiple fronts, including by arguing that the alleged misstatements that remained in

the case had zero price impact. They also would have argued that there was a mismatch between the alleged misstatements and the alleged corrective disclosure. If either of Defendants' arguments had prevailed, the putative class would not have been certified, and the Settlement Class would have obtained zero recovery through this Action. The proposed Settlement removes this uncertainty and eliminates the risk that class certification would have been denied, or the class would subsequently have been modified or decertified.

### F. The Experience and Views of Counsel Favor Settlement

"In reviewing a settlement for final approval, courts accord 'great weight' to the recommendation of counsel. Counsel 'are most closely acquainted with the facts of the underlying litigation' and are therefore in an ideal position to assess the fairness of the settlement offer." *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2013 WL 6577020, at *15 (C.D. Cal. Dec. 5, 2013); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("This circuit has long deferred to the private consensual decision of the parties."). Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country, including within this Circuit and District.[2] Lead Counsel believes that the Settlement is an excellent result because it provides the Settlement Class with genuine and substantial relief. *See Extreme Networks*, 2019 WL 3290770, at *9 ("That such experienced counsel advocate in favor of the settlement weighs in favor of approval"); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015) ("'recommendations of plaintiffs' counsel should be given a presumption of reasonableness'").

---

[2] *See* firm resume of BLB&G, attached as Exhibit 4 to Exhibit E1 to the Robinson Declaration.

### G. The Reaction of the Settlement Class

In evaluating class action settlements, courts also consider the reaction of class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026. Here, the deadline for submission of objections to the Settlement or requests for exclusion from the Settlement Class is December 2, 2026. ¶ 92.

Pursuant to the Preliminary Approval Order, the Court-approved Claims Administrator, Kroll, has mailed a total of 291,625 copies of the Court-approved Notice and Claim Form (collectively, the "Notice Packet") to potential Settlement Class Members and nominees as of November 11, 2026. *See* Marquez Decl. (Ex. D) ¶ 9. In addition, the Court-approved Summary Notice was published in *The Wall Street Journal* and over the *PR Newswire* on September 8, 2026. *See id.* ¶ 10. The Notice set out the essential terms of the Settlement and informed potential Settlement Class Members of, among other things, their right to request exclusion from the Settlement Class or object to any aspect of the proposed Settlement. While the December 2, 2026 deadline for Settlement Class Members to exclude themselves or object has not yet passed, to date, only two requests for exclusion and no objections have been received. ¶ 92; Marquez Decl. ¶ 13. Lead Plaintiffs will address any objections or requests for exclusion that may be received in their reply brief due December 9, 2026.

Moreover, both Lead Plaintiffs—sophisticated institutional investors that were closely involved throughout the litigation and the settlement negotiations—strongly support final approval of the Settlement. *See* Wenguer Decl. (Ex. B), ¶ 6; McGee Decl. (Ex. C), ¶ 6. *See also Countrywide*, 2013 WL 6577020, at *16 (granting final approval and stating that "[c]ourts afford special weight to the opinions of class representatives").

In sum, as discussed in detail above, each of the Rule 23(e)(2) and *Hanlon* factors supports a finding that the Settlement is fair, reasonable, and adequate. Final approval is, therefore, appropriate.

## III. THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

The standard for approval of a plan of allocation in a class action under Rule 23 is the same as the standard applicable to the settlement as a whole: the plan must be "fair, reasonable, and adequate." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir. 1992); *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008). An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced class counsel. *See Radient*, 2014 WL 1802293, at *5; *Heritage Bond*, 2005 WL 1594403, at *11. Courts hold that "'[a] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.'" *Biolase*, 2015 WL 12720318, at *5.

The Plan of Allocation is found in Appendix A to the Notice. *See* Marquez Decl., Ex. A, at pp. 18-22. Lead Counsel developed the Plan in consultation with Lead Plaintiffs' damages consultant. The Plan reflects the assumption that Defendants' alleged misstatements and omissions caused the price of Edwards common stock to be artificially inflated throughout the Class Period. *Id.* ¶ 78. In calculating the estimated alleged artificial inflation, Lead Plaintiffs' damages consultant considered the price change in Edwards common stock on July 25, 2024, in reaction to the public disclosure on July 24, 2024, adjusting for price changes attributable to market or industry factors that day. *Id.* Based on that analysis, the estimated amount of alleged artificial inflation calculated by Lead Plaintiffs' damages consultant for purposes of the Plan was $24.17 per share. *Id.*

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of Edwards common stock during the Class Period that is listed in the Claim

Form and for which adequate supporting documentation is provided. The calculation of Recognized Loss Amounts depends upon several factors, including when the claimant's stock was purchased and sold and the purchase or sale price. Claimants who purchased shares during the Class Period but did not hold those shares through the end of the Class Period (when the corrective disclosure occurred) will have no Recognized Loss Amount as to those transactions because any loss they suffered would not have been caused by revelation of the alleged fraud. *See* Notice ¶¶ 79, 81.A. For shares sold during the 90-day period after the Class Period (the "90-day look-back period"), Recognized Loss Amounts will be the least of*:* (i) the amount of alleged artificial inflation in Edwards common stock ($24.17 per share); (ii) the difference between the purchase price and the sale price; or (iii) the difference between the purchase price and the average closing price of Edwards from July 25, 2024 through the date of sale. *Id.* ¶ 81.B. For shares held until the end of the 90-day look-back period (or later), the Recognized Loss Amount is the lesser of: (i) the amount of alleged artificial inflation in Edwards common stock ($24.17 per share), or (ii) the difference between the purchase price and the average closing price of Edwards during the 90-day look-back period ($66.77 per share). *Id.* ¶ 81.C.

The sum of a Claimant's Recognized Loss Amounts for all his, her, or its Class Period purchases is the Claimant's "Recognized Claim." Notice ¶ 82. The Plan of Allocation also limits Claimants' Recognized Claim based on whether they had an overall market loss in their transactions in Edwards common stock during the Class Period. A Claimant's Recognized Claim will be limited to the amount of his, her, or its market loss in Edwards common stock transactions during the Class Period, and Claimants who have an overall market gain are not eligible for a recovery. *Id*. ¶¶ 88-89. The Net Settlement Fund will then be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id*. ¶ 90.

One hundred percent of the Net Settlement Fund will be distributed to Settlement Class Members who submit eligible claims. If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent cost-effective distributions will also be conducted. Notice ¶ 92. In the event any funds remain after all cost-effective distributions of the Net Settlement Fund to eligible claimants have been completed, the remaining balance will be contributed to non-sectarian, not-for-profit 501(c)(3) organization(s) recommended by Lead Counsel and approved by the Court. *Id.*

Through November 11, 2026, more than 290,000 copies of the Notice, which contains the Plan of Allocation and advises Settlement Class Members of their right to object to the Plan, have been mailed to potential Settlement Class Members. *See* Marquez Decl. ¶ 9. To date, no objections to the Plan of Allocation have been received. ¶ 100.

## IV. NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA

In accordance with the Court's Preliminary Approval Order, Kroll began mailing copies of the Notice Packet to potential Settlement Class Members and nominees on August 24, 2026. *See* Marquez Decl. ¶¶ 4-5. Through November 11, 2026, Kroll has mailed a total of 291,625 Notice Packets. *See id*. ¶ 9. In addition, Kroll caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over the *PR Newswire* on September 8, 2026. *Id.* ¶ 10. Kroll also established a dedicated settlement website, www.EdwardsLifesciencesSecuritiesLitigation.com, to provide additional information about the Action and the Settlement, as well as access to downloadable copies of the Notice and Claim Form and other Settlement-related documents. *See id.* ¶ 11. Copies of the Notice and Claim Form can also be downloaded from Lead Counsel's website, www.blbglaw.com.

In accordance with Rule 23 and the PSLRA, the Notice apprised Settlement Class Members of, *inter alia*: (i) the claims asserted in the Action and the definition of the Settlement Class; (ii) the amount of the Settlement; (iii) the reasons why the Parties are proposing the Settlement; (iv) the estimated average recovery per affected share of Edwards common stock; (v) the maximum amount of attorneys' fees and expenses that will be sought; (vi) the identity and contact information for representatives from Lead Counsel available to answer questions concerning the Settlement; (vii) the right of Settlement Class Members to object to the Settlement, Plan of Allocation, or motion for attorneys' fees and expenses; (viii) the right of Settlement Class Members to request exclusion from the Settlement Class; (ix) the binding effect of a judgment on Settlement Class Members; (x) the dates and deadlines for certain Settlement-related events; and (xi) the opportunity to obtain additional information about the Action and the Settlement by contacting Lead Counsel or the Claims Administrator, or by visiting the Settlement website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. § 78u-4(a)(7). The Notice also contained the Plan of Allocation and provided Settlement Class Members with information on how to submit a Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund.

Courts have approved notice programs similar to this one in a multitude of class action settlements. *See, e.g.*, *Jiangchen*, 2019 WL 5173771, at *8 (approving mailed notice, published summary notice, and availability of online notice); *Hefler*, 2018 WL 6619983, at *5 (approving similar notice program); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *7 (N.D. Cal. Feb. 11, 2016) (finding individual notice mailed to settlement class members combined with summary publication constituted "the best form of notice available under the circumstances"). Moreover, this Court has already approved the proposed notice program under the Preliminary Approval

Order. *See* Preliminary Approval Order (ECF No. 103), at 14. Lead Counsel and Kroll carried out the notice program as proposed in that order.

Accordingly, Lead Plaintiffs respectfully submit that the Notice fairly apprises Settlement Class Members of their rights with respect to the Settlement and is the best notice practicable under the circumstances.

## V. THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

The Court's Preliminary Approval Order provisionally certified the Settlement Class under Rules 23(a) and (b)(3) for purposes of the Settlement. *See* Preliminary Approval Order (ECF No. 103) at 7. Nothing has occurred since then to cast doubt on the propriety of class certification, and no objections to certification have been received. For all the reasons stated in the Preliminary Approval Order and Lead Plaintiffs' unopposed motion for preliminary approval of the Settlement (ECF No. 100), Lead Plaintiffs respectfully request that the Court grant final certification to the Settlement Class under Rules 23(a) and (b)(3).

## VI. CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate.

Dated: November 11, 2026

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ *Jeremy P. Robinson*
Salvatore J. Graziano (*pro hac vice*)
Jeremy P. Robinson (*pro hac vice*)
Thomas Z. Sperber (*pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400

salvatore@blbglaw.com
jeremy@blbglaw.com
thomas.sperber@blbglaw.com

-and-

Jonathan D. Uslaner (Bar No. 256898)
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3481
jonathanu@blbglaw.com

*Lead Counsel for Lead Plaintiffs Louisiana Sheriffs' Pension & Relief Fund and City of Fort Lauderdale Police & Firefighters' Retirement System and the Settlement Class*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON, P.A.**
Robert D. Klausner
7080 Northwest 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
bob@robertdklausner.com

*Additional Counsel for Lead Plaintiffs Louisiana Sheriffs' Pension & Relief Fund and City of Fort Lauderdale Police & Firefighters' Retirement System*

## VERIFICATION

Generative artificial intelligence was utilized to generate and/or assist with the drafting of portions of this filing. I verify that all source material has been reviewed, and any artificially generated content is accurate and complies with counsel's Rule 11 obligations.

Dated: November 11, 2026

By: */s/ Jeremy P. Robinson*
Jeremy P. Robinson